480 A.2d 1209

**COMMONWEALTH of Pennsylvania**

v.

**Kenneth CHAMBERLAIN, Appellant.**

Superior Court of Pennsylvania.

Submitted March 5, 1984.

Filed Aug. 3, 1984.

---

**5.** Their lack of sympathy seems apparent in view of their imposition of the death sentence.

110

Elaine DeMasse, Assistant Public Defender, Philadelphia, for appellant.

Jane C. Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before ROWLEY, POPOVICH and CERCONE, JJ.

POPOVICH, Judge:

After a non-jury trial in the Court of Common Pleas of Philadelphia County, appellant, Kenneth Chamberlain, was convicted of knowing and intentional possession of a controlled substance. Post-trial motions were denied after which appellant was sentenced to four to eight months in the County Jail. This appeal followed.

The findings of fact upon which the lower court judge relied and which are supported by the record are as follows: On November 20, 1981, at approximately 1:05 a.m., the arresting officers observed an automobile being driven with multiple Motor Vehicle Code violations.[1] The car pulled over upon request, and, as the officers approached the car, they noticed the driver attempting to conceal a black handgun. At this time, the driver and his passenger, appellant herein, were ordered to exit the car. The driver was searched for weapons, and the officer found a manilla envelope which contained a small amount of "green weed" in the driver's pocket. The appellant was then searched by the officers. Manilla envelopes similar to the one removed from the driver were removed from the outside pocket of

---

1. Appellant was a passenger in a car with no left headlight and no taillights.

appellant's jacket. The police opened the packets and found that they contained what appeared to be controlled substances.

Appellant contends on appeal that the trial court erred in denying his motion to suppress the contents of those manilla envelopes as the drugs found therein were the fruits of an unlawful search by police officers. We affirm.

■■■ Our function on review of an order denying a motion to suppress is to determine whether the factual findings of the lower court are supported by the record. In making this determination, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense, as, fairly read in the context of the record as a whole, remains uncontradicted. If, when so viewed, the evidence supports the factual findings, we are bound by such findings and may only reverse if the legal conclusions drawn therefrom are in error. *Commonwealth v. Trenge*, 305 Pa.Super. 386, 451 A.2d 701 (1982).

■ In the instant case, we hold that appellant was initially subjected to a *Terry v. Ohio* [2] "stop and frisk" and was not placed in full custodial arrest until after the drugs had been seized from him. *See Commonwealth v. Collini*, 264 Pa.Super. 36, 398 A.2d 1044 (1979). However, according to the testimony, after satisfying himself that appellant carried no weapons, the officer returned to the pocket which contained the drugs and proceeded to remove and inspect the contents of the manilla envelopes found therein.[3] It was the latter action on the part of the police officer, taken after the search for weapons was concluded, which underlies appellant's primary claim of error. Our review must necessarily be comprised of a two-stage inquiry: (1) wheth-

2. 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

3. A I completed the frisk for a weapon, then I went back to his pocket, that's correct.
Q So, after you didn't find any weapon, that's when you reached into his pocket?
A That's correct.
(Testimony of arresting Officer Whartman 4/30/82, T-31)

er, in view of the circumstances, the initial "stop and frisk" of appellant was justified under the *Terry* standard, and (2) whether the contents of appellant's pocket were lawfully seized after the officers were satisfied that appellant was not armed.

 The United States Supreme Court has recognized that investigative detentions involving suspects in vehicles are especially fraught with danger to police officers. In *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), the Court held that police may order persons out of an automobile during a stop for a traffic violation and may frisk those persons for weapons if there is a "reasonable belief" that they are armed and dangerous. That decision rested in part on the "inordinate risk confronting an officer as he approaches a person seated in an automobile." *Id.* 434 U.S. at 110,[4] 98 S.Ct. at 333. The *Terry* "stop and frisk" rule from which the *Mimms* rule derives deals with the permissibility of a frisk incident to an investigative stop based on less than probable cause to arrest. The issue is whether "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry v. Ohio, supra*, 392 U.S. at 27, 88 S.Ct. at 1883. Since the officer need not have been absolutely certain that the individual was armed, the driver's action in attempting to conceal the handgun justified the police officer's apprehension of danger.

Admittedly, the frisk of appellant was based solely on the driver's action in concealing the handgun and the officer's resulting perception of danger. In his work *Search and Seizure: A Treatise on the Fourth Amendment*, Section 9.4, p. 119, the noted commentator, Wayne R. LaFave, states:

**4.** One study concludes that approximately 30% of the shootings of police officers occur when an officer stops a person in an automobile. Bristow, Police Officer Shootings—A Tactical Evaluation, 54 J.Crim. L.C. & P.S. 93 (1963).

"Yet another situation in which there may exist grounds for a frisk is when the policeman and a citizen are brought into contact as a consequence of the officer acting to arrest a companion of that person."

*Commonwealth v. Hook,* 313 Pa.Super. 1, 459 A.2d 379 (1983) dealt with such a situation. Appellant therein was detained because a police officer noticed a lump protruding from his companion's sweater. Although the court held that appellant had been arrested and not merely stopped and that probable cause was lacking, it noted that it would have been permissible for the officers to detain appellant for an investigatory stop and to conduct a limited search for weapons. (*See also* Dissent by Popovich, J.).

A leading case on this subject is *U.S. v. Berryhill,* 445 F.2d 1189 (9th Cir.1971). In upholding the search of a companion, the court observed that

"We think that *Terry* recognizes and common sense dictates that the legality of such a limited intrusion into a citizen's personal privacy extends to a criminal's companions at the time of arrest. It is inconceivable that a police officer effecting a lawful arrest of an occupant of a vehicle must expose himself to a shot in the back from [the suspect's] associate because he cannot, on the spot, make a nice distinction between whether the other is a companion in crime or a social acquaintance. All companions of the arrestee within the immediate vicinity, capable of accomplishing a harmful assault on the officer are constitutionally subjected to the cursory 'pat-down' reasonably necessary to give assurance that they are unarmed."

*Accord, U.S. v. Poms,* 484 F.2d 919 (4th Cir.1973), *U.S. v. Del Toro,* 464 F.2d 520 (2d Cir.1972), *Lewis v. U.S.,* 399 A.2d 559 (D.C.App.1979), *U.S. v. Tharpe,* 536 F.2d 1098 (5th Cir.1976).

Assuming, as we do, that the initial stop and frisk was justified, we further hold that the seizure of the contents of appellant's pockets was lawful, and suppression is not indicated.

■ The manilla envelopes were observable in appellant's bulging pocket; however, according to the testimony, the drugs themselves were not visible until after the envelopes were extracted from the pocket.[5] The "plain view" doctrine [6] may be employed only if we accept the hypothesis that the manilla envelopes were so linked with the carrying of drugs that the officers' view of the envelopes was tantamount to a view of the drugs themselves. One of the arresting officers contended that, in his experience, manilla envelopes are most often used to conceal drugs.[7] The officers, therefore, predicated their seizure on the driver's coincidental possession of "green weed" in a similar manilla envelope along with the fact that manilla envelopes are commonly used for drug packaging.

■ *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (plurality opinion) is dispositive. It involved a routine stop of an automobile at a driver's license checkpoint. As he was situated alongside the driver's window, the officer shined his flashlight into the car and saw respondent therein withdraw his right hand from his right pants pocket. He noted respondent holding an opaque, green party balloon, knotted about ½ inch from the tip. The officer reached into the car and picked up the balloon, and noticed a powdery substance within the tied-off portion. The plurality rejected the implication that an "unduly high degree of certainty as to the incriminatory character of

5. A As I was frisking the defendant for a weapon, ... I observed four manila envelopes in his right front pocket of his jacket. T–26
Q Could you see through the manila envelopes and see what was inside?
A No I couldn't.
Q Now, you had to take those manila envelopes out of his pocket, is that right?
A That's correct. T–29.

6. *See, e.g., Commonwealth v. Harris*, 479 Pa. 131, 387 A.2d 869 (1978).

7. Q And in your experience as a Philadelphia Highway Patrolman, what is carried in those small manila envelopes?
A Controlled Substances, ...
(Testimony of Officer Whartman, 4/30/82, T–27)

evidence is necessary for an application of the 'plain view' doctrine." *Id.* 103 S.Ct. at 1542. They noted

"... probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief' (cite omitted) that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false .... With these considerations in mind, it is plain that [the officer] possessed probable cause to believe that the balloon in Brown's hand contained an illicit substance. [The officer] testified that he was aware, both from his participation in previous narcotics arrests and from discussions with other officers, that balloons tied in the manner of the one possessed by Brown were frequently used to carry narcotics .... In addition, [the officer] was able to observe the contents of the glove compartment, which revealed further suggestions that Brown was engaged in activities that might involve possession of illicit substances. *The fact that [the officer] could not see through the opaque fabric of the balloon is all but irrelevant; the distinctive character of the balloon itself spoke volumes as to its contents—particularly to the trained eye of the officers.*" *Id.,* 103 S.Ct. at 1543. (Emphasis added)

*Cf. Commonwealth v. Kelly,* 487 Pa. 174, 409 A.2d 21 (1979). The Court's application of the "plain view" doctrine under these circumstances provides further grounds for seizure of an item only "when an officer's access to an object has some prior justification under the Fourth Amendment. 'Plain view' is perhaps better understood, therefore, not as an independent exception to the warrant clause, but simply as an extension of whatever the prior justification for an officer's 'access to an object' may be." The plurality notes examples of such a justification, i.e., "... some exception to the warrant clause, e.g., ... *Terry v. Ohio* ..." *Texas v. Brown, supra,* n. 4, 103 S.Ct. at 1540. Here, the initial justification for the "stop and frisk" was dealt with

previously in our analysis of the first stage of appellant's detention. Since the original "stop and frisk" was justified, the only remaining question is whether there was probable cause to associate the property with criminal activity. *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

Under the circumstances, the officers did not have to turn a blind eye to the incriminating evidence. One arresting officer testified that in his fourteen years as a highway patrolman, he had on approximately 200 occasions come into contact with manilla envelopes used for the purpose of concealing drugs. (T-27) *Brown* is factually similar to the case *sub judice* in that seemingly, the heroin in the balloons was only distinguishable upon close inspection after seizure. Here, since certain of the envelopes were open, the officer needed only to peer inside after seizure to distinguish their contents. (*See also Commonwealth v. Trenge, supra,* which involved the seizure of a marijuana pipe from Trenge's pocket. The court held that the seizure was lawful, relying heavily on the observations and opinions of the officer involved which were "obviously those of a highly-trained and experienced police officer." *Id.,* 305 Pa.Superior Ct. 403, 451 A.2d at 710. The court went so far as to footnote the fact that the officer had frequently lectured on the subject of marijuana and its paraphernalia. *Id.,* 305 Pa.Superior Ct. 390 n. 1, 451 A.2d at 703 n. 1.)

■ The envelopes were recognizable as a common drug packaging device, and similar envelopes were found on appellant's companion. We hold, therefore, that the facts available to the police officers and the implications drawn therefrom, consistent with *Brown*, gave them probable cause for the seizure under the "plain view" doctrine which "authorizes seizure of illegal or evidentiary items observable to a police officer whose access to the object has some prior Fourth Amendment justification and who has probable cause to suspect that the item is connected with criminal

activity." *Illinois v. Andreas*, 463 U.S. 765, 103 S.Ct. 3319, 3324, 77 L.Ed.2d 1003 (1983).

Judgment of sentence affirmed.