490 A.2d 923

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Willie KENDRICK.**

Superior Court of Pennsylvania.

Argued Dec. 19, 1984.

Filed April 4, 1985.

564

Dara A. DeCourcy, Assistant District Attorney, Pittsburgh, for Commonwealth, appellant.

Verdell Dean, Pittsburgh, for appellee.

Before ROWLEY, OLSZEWSKI and POPOVICH, JJ.

OLSZEWSKI, Judge:

This is an appeal from a lower court order granting a motion to suppress. The Commonwealth contends that the warrantless search of appellee, Willie Kendrick, was lawful and, therefore, the lower court erred in suppressing the evidence. We agree and reverse the lower court's suppression order.

The facts of this case may be quickly summarized. On January 11, 1983, narcotics detectives received information from an informant regarding the sale of heroin at the residence of Buzzy (Craig Owens) and Mary Emma. The detectives used this information, along with information gathered from their own surveillance of the house, to secure a search warrant for the residence. The warrant was issued and executed on January 14, 1983.[1]

Arriving at the residence, the detectives knocked at the door but received no answer. The detectives knocked

1. The probable cause section of the search warrant stated:
We the Affiants received information from a confidential and reliable informant in person during the evening hours of 1–11–83. This informant has proven true and correct in the past with information leading to the arrests and convictions of John Hejnosz and Laura Borland both for possession of Heroin. This informant stated that he/she was in the above named residence during the week of 1–3–83 and had observed the above named subjects in the possession of a quantity of Heroin which was packaged in aluminum foil packets. At this time this informant accompanied these Affiants to the above named residence and pointed this residence out to these Affiants. These Affiants observed the residence from 8:00 p.m. thru 9:15 p.m. and observed 12 individuals all black males and females arrive at the residence at different times in pairs and alone. Each of these individuals entered the residence and remained for several minutes then exiting the residence and leaving the area. On 1–12–83 your Affiants arrived at the above named residence at 8:15 p.m. and remained until 9:20 p.m. During this period 4 different black

again, identified themselves and again received no response. However, one detective testified that he could see people inside the house running past the front door toward the left hand side of the structure. The detectives knocked and identified themselves one final time; again receiving no response, they forcibly entered the residence. Immediately upon entry, the detectives were confronted by a man (later identified as Craig Owens) wielding a shotgun. Fortunately, the gunman retreated into a bedroom without firing at the detectives. The detectives then forcibly entered the bedroom. Inside the bedroom, the detectives found appellee, Owens, and two women; they also found the shotgun under a bed. A thorough search of the residence resulted in the further discovery of three juveniles hiding in a closet in another part of the house.

After securing the premises, the detectives directed the four adults from the bedroom into the living room and told them to lie down on the floor. The police detectives then proceeded to search the four for weapons. As one of the detectives approached appellee to conduct the weapons search, he noticed something black in appellee's left hand. Although appellee attempted to conceal the object by tucking his hand under his body, the item was seized and the weapons search conducted. The object in appellee's hand

males were observed arriving separately at said residence, entering same, remaining for several minutes and then leaving the area. On 1–13–83 during the morning hours we the Affiants received information by telephone at our office from the same informant who stated that he/she was within the above named residence within the past 36 hours and during this time did observe the above named individuals in the possession of a quantity of heroin packaged in aluminum foil packets and in capsules. This informant states that this substance was being offered for sale and while at the residence did observe the individuals sell a quantity of this substance to an unknown black male who came to the residence for an unknown amount of cash. This informant states that this substance was still present upon his/her leaving the residence. This informant knows heroin from seeing it numerous times in the past and from being an admitted user of drugs. Based upon the past reliability of the informant, the information supplied by the informant and the experience of your Affiants as narcotics detectives we hereby request that a search warrant for the above named address be issued.

turned out to be a black plastic film vial. The detective immediately opened the vial and found 27 foil packets containing heroin. Appellee was arrested and charged with possession of a controlled substance and possession with intent to deliver.

■ On May 16, 1983, appellee moved for suppression of the film container and its contents claiming that the items were the product of an unlawful search and seizure.[2] A hearing on the motion to suppress was held on June 28, 1983 before the Honorable George H. Ross. Judge Ross granted the motion holding that the evidence was (1) not subject to the search warrant; (2) not seized pursuant to a *Terry*[3] frisk; and (3) not within the detective's plain view. This appeal by the Commonwealth followed.[4]

■ The Fourth Amendment to the United States Constitution protects "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." The Amendment protects two different interests of the citizen—the interest in retaining the possession of property and the interest in maintaining personal privacy. A seizure threatens the former, a search the latter. *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (Stevens, J., concurring at 1546). The instant case involves both a seizure and a search—the

**2.** Appellee's motion to suppress stated in part.
6. That the arrest and search of the defendant was illegal, invalid and unconstitutional for the following reasons:
(a) The arrest was made without warrant and without probable cause.
(b) The search of the Defendant was not incident to a lawful arrest.
(c) The search warrant was not properly executed.
(d) That the arrest and search of the Defendant was otherwise illegal under all the circumstances.

**3.** *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

**4.** Given the nature of the offenses and the fact that the lower court's order bars admission of all contraband seized pursuant to the contested search, the Commonwealth is left with no evidence on which to proceed to trial. Therefore, the Commonwealth's appellate rights have vested in the instant case. *Commonwealth v. Evans*, 314 Pa.Super. 16, 460 A.2d 350 (1983); *Commonwealth v. Lapia*, 311 Pa.Super. 264, 457 A.2d 877 (1983).

seizure of the vial and the search of the vial revealing its contents.

The Commonwealth maintains that the seizure of the vial was lawful because the vial was in the "plain view" of the officer.[5] *See e.g. Commonwealth v. Harris,* 479 Pa. 131, 387 A.2d 869 (1978). The first indepth discussion of the "plain view" doctrine appears in the plurality's opinion in *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). The plurality concluded that the "plain view" doctrine permits a warrantless seizure of private possessions by police when three requirements are satisfied. First, the police officer must lawfully make an "initial intrusion" or otherwise properly be in a position to view the evidence. *Id.* at 465–468, 91 S.Ct. at 2037–2039. Secondly, the officer must discover the incriminating evidence "inadvertently", which is to say, the officer may not "know in advance the location of (certain) evidence and intend to seize it," relying on the "plain view" doctrine only as a pretext. *Id.* at 470, 91 S.Ct. at 2040. Finally, it must be "immediately apparent" to the police that the items they observe may be evidence of a crime, contraband or otherwise subject to seizure. *Id.* at 466, 91 S.Ct. at 2038. In *Texas v. Brown,* the Supreme Court in another plurality opinion reevaluated the *Coolidge* requirements. Regarding the third element, that the criminal nature of the evidence be "immediately apparent", the Court stated:

> Decisions by this Court since *Coolidge* indicate that the use of the phrase "immediately apparent" was very likely an unhappy choice of words, since it can be taken to imply that an unduly high degree of certainty as to the incriminating character of the evidence is necessary for an application of the "plain view" doctrine.

*Id.* 103 S.Ct. at 1542.

■ The *Brown* Court, rejected the "immediately apparent" language of *Coolidge,* and reaffirmed the rule set

---

**5.** The Commonwealth further maintains that the seizure may be justified as either within the scope of a *Terry* frisk or as incident to a lawful arrest. Since we find that the item seized was within the "plain view" of the detective, it is not necessary to reach these issues.

forth in *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371 at 1380, 63 L.Ed.2d 639 that "the seizure of property in plain view involves no invasion of privacy and is *presumptively* reasonable, *assuming that there is probable cause to associate the property with criminal activity"* (emphasis supplied). Thus, after *Texas v. Brown, supra,* the requirements for application of the "plain view" doctrine are (1) lawful "initial intrusion"; (2) inadvertence; and (3) probable cause to associate the observed property with criminal activity.

▮▮▮ Applying these principles, we conclude that the detective lawfully seized the film vial. At the suppression hearing, the court made an express finding that the circumstances surrounding the execution of the search warrant justified a protective weapons search of appellee. Judge Ross stated:

> There's no doubt in my mind under the circumstances under which these police went in there with a shotgun being there, they have the absolute right to make a search of anybody in there to determine whether there were any weapons on them.

Since the detective was conducting a lawful *Terry* frisk when he first saw the film vial, we conclude that the "initial intrusion" was lawful. *See Commonwealth v. Chamberlain,* 332 Pa.Super. 108, 480 A.2d 1209 (1984); *Illinois v. Andreas,* 463 U.S. 765, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983). Turning now to the second prong of our *Coolidge-Brown* analysis, we conclude that the discovery of the film vial was inadvertent. Although the detectives were no doubt aware of the possibility of encountering an in-progress drug sale, there is no indication in the record that they had anything beyond a general expectation. *Texas v. Brown, supra* 103 S.Ct. at 1543. Our final inquiry is whether the detectives had probable cause to associate the observed object with criminal activity.

▮▮▮ Probable cause is a flexible, common-sense standard. As the Supreme Court in *Texas v. Brown, supra* commented 103 S.Ct. at 1543:

It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief," *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 288 [69 L.Ed. 543] (1925), that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A "practical, nontechnical" probability that incriminating evidence is involved is all that is required. *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311 [93 L.Ed. 1879] (1949).

Moreover, when examining a particular situation to determine if probable cause exists, a court must consider all factors and not concentrate on any individual element. Furthermore, it is important to focus on the circumstances as seen through the eyes of a trained officer and not to view the situation as an average citizen might. Finally, probable cause does not deal in certainties; rather, a court is faced with the factual and practical considerations of everyday life which affect how reasonable and prudent men act. *See Commonwealth v. Trenge*, 305 Pa.Super. 386, 395, 451 A.2d 701, 705 (1982); *Commonwealth v. Tolbert*, 235 Pa.Super. 227, 230, 341 A.2d 198, 200 (1975).

■ In the instant case, evidence at the suppression hearing revealed a valid search warrant authorizing a narcotics search of the residence. When the detectives attempted to execute the warrant, they were immediately confronted by a gunman. Under these circumstances, it was not unreasonable for the detectives to conclude either that criminal activity was currently taking place, or had taken place just prior to their arrival. Focusing now on appellee, the evidence showed that appellee was present in a house in which the detectives suspected drug trafficking activities. Moreover, when the detectives arrived at the residence to execute the warrant, appellee attempted to avoid police detection by retreating into a bedroom. Failing to avoid detection and once under police custody, appellee then attempted to hide the film vial under his body. In light of the

foregoing, we do not hesitate in finding that there was probable cause to associate the concealed object with criminal activity. *See Commonwealth v. Chamberlain, supra; Texas v. Brown, supra; Commonwealth v. Gease,* 304 Pa.Super. 433, 450 A.2d 989 (1982). We hold, therefore, that the seizure was lawful.[6]

■ Turning now to the issue of whether the search of the vial, revealing its contents, was lawful. The Commonwealth contends that the detectives had probable cause to open the film vial and examine its contents. We agree.

This Court concludes that under the circumstances of this case, discussed *supra,* it was not unreasonable for the detectives to open the vial. As this Court stated in *Commonwealth v. Spriggs,* 224 Pa.Super. 76, 302 A.2d 442 (1973), a similar case involving a film vial:

> There is no logical limitation upon the right of police discovering a container upon the appellant that may contain a weapon or contraband to search the container's contents and seize such evidence. . . .

**6.** *See U.S. v. Jackson,* 649 F.2d 967 (3rd Cir.1981) cert. denied *Bailey v. U.S.,* 454 U.S. 871, 102 S.Ct. 341, 70 L.Ed.2d 176. (Police who entered bar with a search warrant for the bar and arrest warrants for five persons on drug related charges, had probable cause to arrest and search defendant, who was not named in either the arrest or search warrant, when they observed defendant attempt to hide capsules of the type commonly containing heroin in a freezer); *Commonwealth v. Moore,* 300 Pa.Super. 488, 446 A.2d 960 (1982) (officers observed appellant and companion emerge from an alley in a high crime area at night, leaf through an object, and run at first sight of police. These facts plus permissible inferences from them would lead a man of reasonable caution to suspect criminal activity was afoot.)

*Cf. Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979) (not only was probable cause to search Ybarra absent at the time the warrant was issued, it was still absent when the police executed the warrant. Ybarra made no gestures indicative of criminal conduct, made no movements that might suggest an attempt to conceal contraband and said nothing of a suspicious nature to the police officers); *Commonwealth v. Kelly,* 487 Pa. 174, 409 A.2d 21 (1979) (when officers had neither been informed of nor observed suspicious conduct or circumstances that would give rise to an inference of possession of a controlled substance, they lacked probable cause to seize from plain view amber prescription vial which contained several foil packets of hashish.)

224 Pa.Superior Ct. at 78, 302 A.2d at 443. Although the *Spriggs* decision was rendered prior to our Supreme Court's decision in *Commonwealth v. Timko*, 491 Pa. 32, 417 A.2d 620 (1980) (contents of leather valise could not be searched incident to arrest absent a separate search warrant), decisions such as *Spriggs* should not be overlooked. *See e.g. Commonwealth v. Rota*, 222 Pa.Super. 163, 292 A.2d 496 (1972) (police may search contents of a suspicious package). The *Timko* decision expressly limited itself to cases "involving a search of luggage or other personal property in which a person has a reasonable expectation of privacy." 491 Pa. at 39, 417 A.2d at 623. Cases, like the one at bar, involving vials or other "suspicious packages" can be distinguished since there is no reasonable expectation of privacy. *See Commonwealth v. Chamberlain, supra* (warrantless search of manila envelopes held to be lawful); *Texas v. Brown, supra* (warrantless search of a green party balloon held to be lawful).

 This Court believes that a film vial, a common package for carrying narcotics, is more closely akin to those rare single-purpose containers which "by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance." *Arkansas v. Sanders*, 442 U.S. 753, 764–765 n. 13, 99 S.Ct. 2586, 2593–2594 n. 13, 61 L.Ed.2d 235 (1979). Admittedly, a film container has other uses and therefore is not purely a "single-purpose" container. However, given the circumstances of this case, we believe that the trained narcotics detective's view of the container was tantamount to a view of the heroin itself. *See Texas v. Brown, supra* (Stevens, J., concurring at 1547). Therefore, we hold that the search of the film vial was lawful.

Since we have concluded that both the seizure of the film vial and the search of its contents were lawful, it follows then that the lower court erred in suppressing the evidence. Accordingly, we reverse the order of the lower court and remand the case for trial.

Order reversed and case remanded for trial. Jurisdiction relinquished.

POPOVICH, J., files a dissenting opinion.

POPOVICH, Judge, dissenting:

I respectfully dissent. The majority arrives at a conclusion which, taken to its logical extension would ensure the admissibility of contraband secreted in a container which is visible to police even though the container does not imply contraband to the officer; is not, in fact, deduced to be contraband by the officer; and does not resemble a weapon. Even after *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), the Supreme Court had not abandoned the requirement that application of the "plain view" doctrine is permissible *only* when there is probable cause to associate the observed property with criminal activity. Probable cause may well be a "flexible, common-sense standard", nevertheless its importance remains undisturbed as a requirement which must be satisfied even though, as here, an individual is in the company of known drug dealers.

When a motion is made to suppress evidence, "the burden is on the Commonwealth to establish by a preponderance of evidence that the challenged evidence is admissible." *Commonwealth v. Ryan*, 300 Pa.Super. 156, 446 A.2d 277, 285 (1982). The Commonwealth had the opportunity to introduce evidence which could have indicated the presence of probable cause arising either from (1) appellee's behavior or (2) the officer's view of the film cannister, utilizing the "plain view" doctrine as it has been expanded to embrace the situation where certain containers are characterized as so suspicious as effectively to represent a view of the drugs themselves. (*See Commonwealth v. Chamberlain*, 332 Pa.Super. 108, 480 A.2d 1209 (1984). The Commonwealth neglected to offer such evidence and thereby failed to sustain its burden.

As the majority notes "[i]t is important to focus on the circumstances as seen through the eyes of a trained officer and not to view the situation as an average citizen might."

In doing so, we are immediately confronted with Detective Ross' apparent lack of knowledge or suspicion of the vial's function as a repository for contraband. The court asked Detective Ross:

Could you identify, could you see what this man had in his hand?

[Ross]: Yes. It was a plastic—*I wasn't sure exactly what it was* at that time except it was plastic and it was black. (T–28, 29)

Indeed, an officer need not be possessed of a "near certainty" as to the nature of the time; however, here *no* evidence was presented which tended to show that the officer who noticed the vial had the requisite probable cause which would have allowed him to confiscate it under the "plain view" doctrine. At a minimum, testimony could have been presented to the effect that the officer's expertise and background encouraged his belief that the vial contained evidence of a crime or that such vials often act as repositories for drugs. *Texas v. Brown, supra, Commonwealth v. Chamberlain, supra; Commonwealth v. Trenge,* 305 Pa. Super. 386, 451 A.2d 701 (1982).

At oral argument, the Commonwealth all but abandoned the "plain view" argument, concentrating on whether probable cause to search appellee existed based on his alleged concealment of the film vial. Coupled with his conduct in attempting to hide in the bedroom and his association with those named in the warrant, a *furtive* concealment of the vial could have given rise to probable cause to search or arrest appellee. *Commonwealth v. Gease,* 304 Pa.Super. 433, 450 A.2d 989 (1982). However, the fact that appellee "put [the cannister] up under his body" does not necessarily indicate an attempt to conceal contraband. Indeed, neither officer involved characterized appellee's action as suspicious, furtive or in any way indicative of his probable involvement in criminal conduct. This showing was essential to defeat appellee's motion to suppress.

In *Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979) the United States Supreme Court stated that

[In this case] we are asked to construe the Fourth and Fourteenth Amendments to permit evidence searches of persons who, at the commencement of the search, are on "compact" premises subject to a search warrant, at least where the police have a "reasonable belief" that such persons "are connected with" drug trafficking and "may be concealing or carrying away the contraband."

*Id.*, 100 S.Ct. at 344. The Supreme Court declined the opportunity to sanction such a search. I would affirm the order of court granting appellee's motion to suppress.