595 A.2d 1315

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Alejandro Garcia PEREZ, Appellee.**

Superior Court of Pennsylvania.

Submitted May 28, 1991.

Decided Sept. 4, 1991.

Karen M. Kobily, Asst. Public Defender, Reading, for appellant.

Charles B. Coleman, Asst. Dist. Atty., Reading, for Com., appellee.

Before WIEAND, OLSZEWSKI and MONTGOMERY, JJ.

WIEAND, Judge:

When a police officer makes a lawful *Terry* stop and, after frisking the suspect, finds no weapon, may the officer then seize and open a small, nondescript, leather pouch protruding from the suspect's pocket? The trial court held

that the search of the pouch exceeded the proper scope of the lawful stop and frisk and suppressed the contents of the pouch. The Commonwealth appealed. It has certified that the cocaine found inside the pouch is essential to prove appellee's guilt of the drug offenses with which he has been charged.[1]

The standard of review to be employed in conducting appellate review of the suppression court's order was stated in *In the Interest of Jermaine*, 399 Pa.Super. 503, 505, 582 A.2d 1058, 1059 (1990), as follows:

> In reviewing an appeal taken by the Commonwealth from an order suppressing evidence,
>
>> we must consider only the evidence of the defendant's witnesses and so much of the Commonwealth evidence that, read in the context of the record as a whole, remains uncontradicted. *See Commonwealth v. Hamlin*, 503 Pa. 210, 469 A.2d 137 (1983). Furthermore, our scope of appellate review is limited primarily to questions of law. *See Commonwealth v. White*, 358 Pa.Super. 120, 516 A.2d 1211 (1986). We are bound by the suppression court's findings of fact if those findings are supported by the record. *Id.* Factual findings wholly lacking in evidence, however, may be rejected. *Id.*
>
> *Commonwealth v. Stine*, 372 Pa.Super. 312, 314, 539 A.2d 454, 455 (1988). See also: *Commonwealth v. James*, 506 Pa. 526, 532–533, 486 A.2d 376, 379 (1985); *Commonwealth v. Elliott*, 376 Pa.Super. 536, 543, 546 A.2d 654, 657 (1988).

*Id.* 399 Pa.Super. at 505, 582 A.2d at 1059.

On May 18, 1990, police officers Ron Fisher and Gordon Roberts were on patrol in support of a "sting" operation being conducted in Reading, Berks County. The officers, who were in separate vehicles, learned by radio that a drug transaction had occurred nearby and received a description of a suspect who had eluded the police. Shortly thereafter, Roberts came upon Alejandro Garcia Perez, who was on his

1. See: *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985).

hands and knees, reaching beneath the underside of a parked vehicle. As Roberts continued to observe, Perez rose and began to walk away. Although his clothing was different than that being worn by the person who had eluded police following the earlier drug transaction, Roberts believed Perez to be the suspect for whom the police were looking. In fact, Roberts was mistaken. The undercover agent who had witnessed the prior drug transaction stated, when later called to make an on-the-scene identification, that Perez was not the person for whom police had been looking. In any event, Roberts called Fisher for assistance, and the two officers stopped Perez. While he was being questioned by Roberts, Fisher conducted a pat-down search. No weapons were found. However, Perez appeared to be attempting to hide from observation a small, leather pouch which was partially protruding from a pocket of his trousers. Fisher removed the pouch from Perez's pocket, believing it to contain drugs. He testified that the pouch was of a kind commonly used to transport illegal drugs, but the suppression court expressly rejected this testimony and found that "there [was] nothing apparently incriminating about the pouch to justify giving the [o]fficers probable cause to 'associate the property with criminal activity.'" The suppression court also found that the officers could not have believed the pouch to contain a weapon. Nevertheless, Fisher opened the pouch, without Perez's consent and without a warrant, and found therein twenty-six (26) "dime" sized packets of cocaine. The suppression court concluded that the search of the pouch had exceeded the proper bounds of a *Terry* search and suppressed the cocaine.

In *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court of the United States defined the purpose and limits for the stop and frisk of a suspect in the following language:

> [W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating

this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

*Id.* at 30, 88 S.Ct. at 1884–1885, 20 L.Ed.2d at 911. The limits of a *Terry* search were emphasized by the Superior Court in *Commonwealth v. Canning,* 402 Pa.Super. 438, 587 A.2d 330 (1991), as follows:

In *Terry,* the United States Supreme Court articulated a police officer's "narrowly drawn" authority to conduct a reasonable search for weapons for the officer's protection. *Id.* [392 U.S.] at 27, 88 S.Ct. at 1883. The officer may pat down or frisk a suspect for weapons only if he reasonably believes that criminal activity is afoot, and that the suspect may be armed and dangerous. *Id.* The officer must be able to articulate specific facts to justify his belief that the suspect may be armed and dangerous. *Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). Moreover, the scope of a *Terry* search is limited. Because the "sole justification of the search ... is the protection of the police officer and others nearby, ... it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Terry v. Ohio, supra,* 392 U.S. at 29, 88 S.Ct. at 1884. In the instant case, the officer exceeded the scope of a *Terry* search. In order to reach into a suspect's pockets during a *Terry* search, the officer would have to feel something that appears to be a weapon. "Nothing in *Terry* can be understood to allow ... any search whatever for anything but weapons." *Ybarra v. Illinois, supra,* 444 U.S. at 93–94, 100 S.Ct. at 343.

*Id.,* 402 Pa.Superior Ct. at 440–41, 587 A.2d at 331.

Although our research has disclosed no decision by the appellate courts of this Commonwealth which could be said

to be determinative of the facts in the instant case, LaFave has anticipated such circumstances in his Treatise on Search and Seizure and has commented as follows:

It sometimes happens that when the officer withdraws the object from the suspect's pocket, it turns out to be some type of container. The question then arises as to whether it is permissible for the officer to open that container and examine the contents. Certainly the container should not be opened unless it might contain a weapon, a judgment which the officer should be expected to make on the basis of its size, weight and feel. Thus it is improper for an officer to open a small zippered coin purse weighing only a few ounces, for it "could not conceivably have contained a gun nor could any officer reasonably have considered that it contained a dangerous weapon of any kind."

3 W. LaFave, Search and Seizure, § 9.4(d), at p. 525 (2d ed. 1987) (footnote omitted).

The Commonwealth argues, in reliance on a panel decision in *Commonwealth v. Kendrick*, 340 Pa.Super. 563, 490 A.2d 923 (1985), that the search of the pouch can be sustained under the "plain view" doctrine. We reject this argument. *Kendrick* is not apposite, and the Commonwealth's reliance thereon is misplaced. In that case, the police had obtained a search warrant for a house which they believed to be a site for drug related activity. Pursuant to the warrant, the police forcibly entered the house to search for heroin. Present in the house were four adults, one of whom wielded a shotgun, and three juveniles hiding in a closet. While the police were searching the four adults for weapons, they observed that one person had a small black object in his hand which he attempted to conceal from the police. One of the officers seized the object, which was a black plastic film vial. The officer opened it and found heroin. The Superior Court reversed the trial court's suppression of the heroin, stating that the police had probable cause to search the film vial, which was "akin to those rare

single-purpose containers which 'by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance.' " *Commonwealth v. Kendrick, supra,* 340 Pa.Superior Ct. at 573, 490 A.2d at 928–929 (quoting *Arkansas v. Sanders,* 442 U.S. 753, 764–765 n. 13, 99 S.Ct. 2586, 2593–2594 n. 13, 61 L.Ed.2d 235 (1979)). Under these circumstances, the Court concluded, the film vial containing contraband should not have been suppressed.

In the instant case, the police were not engaged in conducting a search pursuant to warrant. There was here no warrant, and the police were engaged only in a *Terry* "stop and frisk" with all the limitations which the law has imposed thereon. The pouch found upon appellee's person was not such that it could have contained a weapon, and there was nothing about it, the suppression court found, to suggest criminal activity. Under these circumstances, the contraband was not in plain view. It was concealed in a nondescript, leather pouch, for the opening of which police lacked any authority. If a warrantless search were condoned under the circumstances of this case, police would be free, without probable cause, to stop and search the wallets of any citizens found walking the streets of our cities whenever the police deemed them "suspicious." This is precisely what the Fourth Amendment was intended to prevent.

The order of the suppression court is affirmed.