J-A34032-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| STEPHANIE J. SALTER | |
| Appellee | No. 653 MDA 2014 |

Appeal from the Order Entered March 17, 2014
In the Court of Common Pleas of York County
Criminal Division at No: CP-67-CR-0008129

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN, and STABILE, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED APRIL 29, 2015**

The Commonwealth appeals from the March 17, 2014 order of the Court of Common Pleas of York County granting Appellee Stephanie J. Salter's motion to suppress evidence obtained following a traffic stop.  We reverse and remand for proceedings consistent with this memorandum.

In relevant part, the trial court summarized the facts and the procedural history of the case as follows:

> In the early morning hours of September 21, 2013, Officer Corey Sheaffer was on routine patrol when he observed that the vehicle ahead of him did not have lights illuminating the license plate.[1]  To confirm his suspicion that the lights were in fact not working, Officer Sheaffer turned off his headlights, which

---

[1] "[H]e was approximately 75 feet behind [Appellee]'s vehicle when he observed the lack of illumination from around the license plate."  Trial Court Opinion, 6/5/14, at 6.

"confirmed" his suspicion. At this point, Officer Sheaffer decided to conduct a traffic stop on the vehicle. After the vehicle pulled over, Officer Sheaffer approached the vehicle and spoke with the driver, who he identified as [Appellee]. [Appellee] provided the officer with all necessary documentation, and it was at this point that the officer . . . "noticed an odor of intoxicating beverage emanating from inside the vehicle." Along with the smell, Officer Sheaffer observed [Appellee]'s eyes were glassy and bloodshot, which prompted him to ask [Appellee] how much she had had to drink. [Appellee] admitted that she had two glasses of wine. . . . At this point, the officer asked [Appellee] to submit to four field tests[.[2]] . . . After [Appellee] performed all four tests, Officer Sheaffer placed [Appellee] under arrest for driving under the influence of alcohol.

Trial Court Opinion, 6/5/14, at 2-3(citations to the record omitted).

After the magisterial district court bound over all charges,[3] the trial court conducted a hearing on Appellee's motion to suppress evidence. Following the hearing, the trial court found the officer had reasonable suspicion to conduct a traffic stop,[4] but it suppressed the evidence of the

_____

[2] The tests included the Horizontal Gaze Nystagmus (HGN), walk and turn, one-leg stand, and the Rhomberg balance tests.

[3] 75 Pa.C.S.A. § 3802(a)(1) (DUI - general impairment), and 75 Pa.C.S.A. § 3802(c) (DUI - highest rate of alcohol, second offense).

[4] At the conclusion of the hearing, the trial court noted:

We conclude that the officer did have reasonable suspicion given the lack of apparent illumination, and the fact he did turn off his lights to try to double check, the officer did have reasonable suspicion to stop the vehicle to investigate further at that point whether or not the license plate—the registration light was out.

Given that, obviously once the stop was made, he had the right to approach the driver, ask the questions he did, so for [sic] that

*(Footnote Continued Next Page)*

Blood Alcohol Content (BAC) test because the officer did not have probable cause to arrest Appellee for driving under the influence (DUI). The Commonwealth timely appealed.[5]

In its Rule 1925(a) opinion, the trial court, in addition to reiterating the propriety of the suppression of the BAC test result, also added, for the first time, the officer lacked probable cause to conduct a traffic stop for the violation of failing to have a license plate illuminated.

On appeal, the Commonwealth raises the following issues:

1. Did the suppression court err in reversing its earlier order in its 1925(a) opinion?

2. Did the suppression court err in granting [Appellee]'s omnibus pre-trial motion by finding that the initial stop was not supported by probable cause?

Appellant's Supplemental Brief, at 4.[6]

_____

*(Footnote Continued)* ————————————————

basis, we will not conclude that the officer lacked legal cause to stop the vehicle to investigate the license plate issue.

N.T. Suppression, 3/17/14, at 60-61.

[5] In its Statement of Jurisdiction, the Commonwealth states the order appealed here is final pursuant to 42 Pa.C.S.A. § 742. It is in fact an interlocutory order from which the Commonwealth has an appeal as of right. **See** Pa.R.A.P. 311(d). Despite the error, in its Notice of Appeal, the Commonwealth did include a Rule 311(d) certification. This appeal is therefore properly before us.

[6] In its original brief, the Commonwealth also challenged the trial court's suppression of the BAC result, which we will address following the discussion of the issues raised in the supplemental brief.

We do not need to address the first issue because we conclude the trial court erred in finding the officer did not have probable cause to stop Appellee.

In its Rule 1925(a) opinion, the trial court, in concluding that the officer did not have probable cause to conduct a traffic stop, reasoned as follows:

> In the present case, Officer Sheaffer testified that while he was behind [Appellee]'s vehicle he noticed that her license plate was not illuminated. To confirm that the lights were in fact not working, Officer Sheaffer turned off his headlights, which he testified, did "confirm" his suspicion. However on cross-examination, Officer Sheaffer testified that he was approximately 75 feet behind [Appellee] when he decided to pull her over for failing to have her license plate illuminated. This type of violation requires no further investigation after the stop.
>
> Section 4303 of the Pennsylvania Motor Vehicle Code requires that license plate lamps be operational "in conformance with [] regulations of the [Department of Transportation]." 75 Pa.C.S.A. § 4303(b). The applicable regulation of the Department requires that if a vehicle is equipped with a license plate lamp, it "shall emit white light and *make the registration plate visible from a distance of 50 feet to the rear of the vehicle*." 65 Pa. Code § 175.66(k). . . .There is no requirement that the *lamp* itself be visible from a distance of 50 feet. As stated above, Officer Sheaffer estimated that he was 75 feet behind [Appellee] when he initiated his traffic stop. There is no testimony in the record that Officer Sheaffer verified that the license plate did not illuminate the license plate closer than 75 feet.
>
> Accordingly, we conclude that the record does not contain testimony which would support a finding of probable cause to stop [Appellee]'s vehicle for the violation of failing to have a license plate illuminated.

Trial Court Opinion, 6/5/14, at 5-6 (citation to Notes of Testimony omitted)

(emphasis in original).  We disagree.[7]

Our standard of and scope of review in suppression matters is well-

settled:

> When reviewing the propriety of a suppression order, an appellate court is required to determine whether the record supports the suppression court's factual findings and whether the inferences and legal conclusions drawn by the suppression court from those findings are appropriate. Because Appellee prevailed in the suppression court, we may consider only the evidence of the defense and so much of the evidence for the Commonwealth as remains uncontradicted when read in the context of the record as a whole.  Where the record supports the factual findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.  However, where the appeal of the determination of the suppression court turns on allegations of legal error, "[t]he suppression court's conclusions of law . . . are not binding on an appellate court, whose duty it is to determine if the suppression court properly applies the law to the facts."  As a result, the conclusions of law of the suppression court are subject to plenary review.

*Commonwealth v. Dean*, 940 A.2d 514, 516 (Pa. Super. 2008) (citations

omitted).

In relevant part, Section 4303 of the Vehicle Code states that "[e]very

vehicle operated on a highway shall be equipped with a rear lighting system

including, but not limited to, rear lamps, rear reflectors, stop lamps and a

license plate light, in conformance with regulations of the department."  75

---

[7] We do not need to decide whether this is an investigatable violation because the officer here had probable cause to believe Appellee had violated the Vehicle Code.

Pa.C.S.A. § 4303(b). Section 4303(b) subjects the plate light to regulatory provisions of section 175.80(a)(9)(i), which states that a vehicle is not in compliance with the Vehicle Code if "[a]n exterior bulb or sealed beam, if originally equipped or installed, *fails to light properly*," 67 Pa. Code § 175.80(a)(9)(i) (emphasis added), and Section 175.66(k), which requires that "the registration plate lamp shall emit white light and make the registration plate visible from [a] distance of 50 feet to the rear of the vehicle." ***Id.*** § 175.66(k)

The license plate lamp was out, which means the plate was not illuminated, which in turn means that the registration plate could not have been visible from a distance of 50 feet to the rear of the vehicle at 3:00 a.m. This is a violation of the Vehicle Code sufficient to justify a traffic stop.

It is of no moment the officer was 75 feet away from the vehicle when he determined the plate was not illuminated, or that Officer Sheaffer did not verify the license plate light did not illuminate the license closer than 75 feet. If the license plate was not illuminated, this fact alone gave the officer sufficient grounds to stop the vehicle, regardless of where the officer was when he first witnessed the violation.

It is also worth mentioning that "probable cause does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most likely inference." ***See Commonwealth v. Spieler***, 887 A.2d 1271, 1275 (Pa. Super. 2005) (citation omitted). Yet,

while the officer originally merely suspected the traffic violation at issue here, he was later able to confirm the violation by driving right behind Appellee's vehicle and turning his headlights off. Once he turned his headlights off, the officer indeed confirmed the plate was not illuminated. Again, this is sufficient to trigger a legal traffic stop.

We next address whether the trial court erred in suppressing the BAC result.[8] The trial court found Officer Sheaffer did not have probable cause to arrest Appellee for several reasons, which we have addressed below. The thrust of the trial court's decision, however, can be summarized in the following statement: "The totality of circumstances including the officer's observations of lack of impairment, and the lack of meaningful field sobriety test results, compelled us to conclude that probable cause was lacking to arrest [Appellee] and request a chemical test." Trial Court Opinion, 6/5/14, at 11. We disagree.

The trial court found the officer did not have probable cause to arrest Appellee because he did not observe erratic driving and slurred speech. These circumstances, along with the "irrelevan[ce]" of the field sobriety tests for purposes of establishing probable cause,[9] led the trial court to conclude

_____

[8] The accuracy of the BAC test result is not at issue.

[9] We will address the trial court's position on the field sobriety tests below.

that the officer did not observe signs of intoxication to warrant Appellee's arrest.

In its opinion, the trial court places significant weight on erratic driving in determining probable cause to arrest for DUI. Trial Court Opinion, 6/5/14, at 10. Erratic driving is not a super-factor, much less one determinative of DUI. "Evidence of erratic driving is not a necessary precursor to a finding of guilt for driving under influence (DUI)-general impairment[.]" ***Commonwealth v. Mobley***, 14 A.3d 887, 890 (Pa. Super. 2011). Similarly, slurred speech, alone, may not determine impairment. ***See Commonwealth v. Segida***, 985 A.2d 871 (Pa. 2009).[10] The applicable standard for determining probable cause calls for a totality of circumstances analysis, not a mechanical consideration of specific factors. ***See***, ***e.g.***, ***Commonwealth v. Dommel***, 885 A.2d 998, 1002 (Pa. Super. 2005).

In the absence of erratic driving and slurred speech, the trial court believed that bloodshot/glassy eyes, odor of alcohol emanating from the

---

[10] In ***Segida***, the Supreme Court noted:

> The types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution **include but are not limited to**, the following: the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech.

***Id.*** at 879 (emphasis added).

vehicle, Appellee's admission that she had "two" glasses of wine, and poor performance on the sobriety tests were not reliable clues of impairment and, therefore, insufficient to warrant Appellee's arrest under suspicion of DUI. We disagree. Probable cause "does not involve certainties, but rather the factual and practical considerations of everyday life on which reasonable and prudent [persons] act." ***Commonwealth v. Angel***, 946 A.2d 115, 118 (Pa. Super. 2008) (citation omitted). In light of the circumstances observed, and the officer's experience and training relating to DUI traffic stops, we conclude the officer had probable cause to arrest Appellee for DUI.

We now address the second part of the trial court's conclusion: the irrelevance of the field sobriety tests for purposes of establishing probable cause. The trial court discounted the officer's observations of Appellee's performance of the field sobriety tests because the officer could not articulate, to the trial court's satisfaction, the significance of Appellee's deviation from the field sobriety standards. The trial court also doubted the reliability of these tests, and the unstandardized way they are administered by police officers.

A review of the record reveals the officer did explain the tests, their administration and purposes, and how Appellee performed. The officer, however, was not able to articulate, according to the trial court, adequate reasons for their reliability.

The trial court questioned the reliability of standardized field sobriety tests for purposes of establishing probable cause to arrest for DUI because they fail to show "correlation to what they demonstrate with regard to alcohol (or drug) impaired driving." Trial Court Opinion, 6/5/14, at 11; *see also id.* at 8, 10.

The trial court seems to ignore that our caselaw recognizes that field sobriety tests, such as those administered here,

> are grounded in theories which link an individual's lack of coordination and loss of concentration, with intoxication. This inter-relationship is also recognized in what is generally accepted as the common indicia of intoxication, within the understanding and experience of ordinary people. In fact, non-expert testimony is admissible to prove intoxication where such testimony is based upon the witness' observation of the defendant's acts and speech and where the witness can opine as to whether the defendant was drunk.

*Commonwealth v. Ragan*, 652 A.2d 925, 928 (Pa. Super. 1995).

The trial court commented on the Commonwealth's failure to produce "testimony regarding the percentage of actually impaired drivers who have bloodshot/glassy eyes, or what percentage of actually impaired driver fail the field sobriety tests generally." Trial Court Opinion, 6/5/14. The trial court misses the point on what the Commonwealth had to prove at that procedural juncture (*i.e.*, suppression hearing) and the burden of proof required at that proceeding.

First, as noted above, these tests are generally accepted methods for ascertaining alcohol or drug impairment at the time of a traffic stop. ***See***

- 10 -

***Weaver, supra***; ***Ragan***, ***supra***. Second, the trial court fails to account for the Commonwealth's burden of proof at a suppression hearing. At a suppression hearing, "the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible." ***Commonwealth v. Simmons***, 17 A.3d 399, 402 (Pa. Super. 2011). Third, and equally important, the trial court also seems to ignore that

> [t]here is a clear distinction between what is required for purposes of establishing probable cause for a warrantless arrest or search and what is required for proving guilt. The arresting officer need not have had in hand evidence which would suffice to convict, as it is only the probability, and not a prima facie showing of criminal activity that is the standard for justifying arrest. The probable cause necessary to support an arrest . . . cannot demand the same strictness of proof as the accused's guilt upon a trial[.]

***Commonwealth v. Anderson***, 302 A.2d 504, (Pa. Super. 1973). ***See also Brinegar v. United States***, 338 U.S. 160, 174-76 (1949).

The trial court also noted these field sobriety tests are not in fact standardized in their administration, and the decision to arrest ultimately depends on the officer's subjective observations, which, in the trial court's view, is improper. Trial Court Opinion, 6/5/14, at 11.

The field sobriety tests are not meant to ascertain with certainty a driver's BAC, but only to provide the officer with information useful to determine whether the driver is impaired. ***See Ragan***, ***supra***. The determination whether to arrest for DUI must be made by the officer in light

- 11 -

of the circumstances surrounding the traffic stop.  Probable cause to arrest

exists

> when the facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.  Probable cause justifying a warrantless arrest is determined by the totality of the circumstances.

> *Commonwealth v. Williams*, 941 A.2d 14, 27 (Pa. Super. 2008) (internal citations and quotation marks omitted).

> It is the facts and circumstances **within the personal knowledge of the police officer** that frames the determination of the existence of probable cause. *See*, *e.g.*, *Commonwealth v. Lawson*, 454 Pa. 23, 27, 309 A.2d 391, 394 (1973) ("Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that an offense has been committed.").

> *Commonwealth v. Galendez*, 27 A.3d 1042, 1046 (Pa. Super. 2011) (*en banc*) (emphasis in original).

*Commonwealth v. Weaver*, 76 A.3d 562, 565 (Pa. Super. 2013), *aff'd*,

105 A.3d 656 (Pa. 2014).

To the extent the trial court suggests the officer did not have probable

cause to arrest Appellee because Appellee did not fail the field tests, it is

worth noting that failing these tests is not a requirement for a determination

of probable cause.  *Commonwealth v. Slonaker*, 795 A.2d 397, 402 (Pa.

Super. 2002) ("[T]he law is well settled that reasonable grounds to arrest does not require the failure of field sobriety tests.").[11]   Nonetheless, performing poorly may be sufficient for a finding of impairment.  **See Commonwealth v Downing**, 739 A.2d 169, 173 (Pa. Super. 1999) ("Appellant demonstrated his impairment by doing poorly on three field sobriety tests.").

The trial court also was bothered by the fact the officer did not ask Appellee whether she had any medical condition that could affect her ability to perform the HGN test.  While the trial court does not elaborate on the legal relevance of this fact, it seems to imply that the officer was under a duty to do so.  The trial court, however, provided no authority for any such duty.  Additionally, there is no indication in the record that Appellee notified the officer of any medical condition that could have precluded or limited her ability to perform the field sobriety tests, nor is there any mention of a circumstance that could have alerted the officer of a medical condition

---

[11] Regarding the HGN test, the officer testified that he observed lack of smooth pursuit, distinct and sustained nystagmus at maximum deviation, and the onset of nystagmus prior to 45 degrees.  N.T. Suppression, 3/17/14, at 15.  Regarding the walk and turn test, the officer noted that while he was giving Appellee instructions on how to perform it, Appellee swayed side-to-side.  During the performance of this test, Appellee lifted her right arm several times and did not touch her heel to her toe on every step, as requested.  **See** Trial Court Opinion, 6/5/14, at 2-3.  Regarding the one-leg stand test, the officer testified that Appellee again swayed, and raised her right arm, despite the fact she was told to keep her hands on her sides.  Appellee substantially completed the fourth test (the Rhomberg balance test).  N.T. Suppression, 3/17/14, at 20.

affecting Appellee. In fact, Appellee did not argue she had a medical condition preventing her to perform the tests. Appellee argued, and the trial court apparently agreed, that her poor performance on the HGN test could have been caused by reasons other than intoxication. Similarly, the trial court emphasized that "[a]s admitted by the District Attorney and the officer, bloodshot/glassy eyes can be caused by numerous other things that do not include intoxication." Trial Court Opinion, 6/5/14, at 10. Even if Appellee's inability to perform could have other explanations, this circumstance, alone, does not make the officer's decision to arrest on suspicion of DUI unreasonable.

> Probable cause exists when criminality is one reasonable inference; it need not be the only, or even the most likely, inference. *See*, *e.g.*, *Commonwealth v. Kendrick*, 340 Pa. Super. 563, 571, 490 A.2d 923 (1985) (probable cause "does not demand any showing that ... a belief [of criminal activity] be correct or more likely true than false"); *Commonwealth v. Moss*, 518 Pa. 337, 344, 543 A.2d 514 (1988) (in assessing sufficiency of probable cause, the fact that other inferences could be drawn from circumstances does not demonstrate that inference that was drawn by police was unreasonable).

*Commonwealth v. Dennis*, 612 A.2d 1014, 1017 (Pa. Super. 1992).

In light of the foregoing, we conclude the officer had probable cause to conduct a traffic stop because the Appellee's license plate was not illuminated and, subsequently, for arresting Appellee under suspicion of DUI. Accordingly, we reverse the order of the trial court and remand for proceedings consistent with this memorandum.

Order reversed. Remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/29/2015