431 A.2d 296

**COMMONWEALTH of Pennsylvania**

v.

**Eugene NIXON, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 14, 1980.

Filed June 12, 1981.

Donald Calaiaro, Pittsburgh, for appellant.

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for Commonwealth, appellee.

Before PRICE, DiSALLE and MONTEMURO, JJ.

MONTEMURO, Judge:

This case is before the court on a direct appeal from a judgment of sentence by a judge, sitting without a jury, for Escape.[1] Post-Trial motions were denied and appellant, Eugene Nixon, was sentenced to a term of two (2) to four (4) years.

The sole question raised by appellant on appeal is whether or not he should be afforded the benefits of the decision of the Pennsylvania Supreme Court in *Commonwealth v. Bussey*, 486 Pa. 221, 404 A.2d 1309 (1979) [Hereinafter *Bussey*], requiring an *explicit* waiver of *Miranda*[2] rights. For the reasons discussed below, we refuse to apply *Bussey* to appellant's case, and we therefore affirm the Order of the lower court.

1. 18 Pa.C.S.A. Sec. 5121(a).

2. *Miranda v. Arizona*, 384 U.S. 486, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) [*Hereinafter Miranda*]

The facts of the case are as follows:

On August 6, 1977, seventeen inmates were found to be missing from the Allegheny County Jail. Appellant was discovered to be one of the missing prisoners, and he did not have official permission to leave. On August 9, 1977, three days later, the Pittsburgh Police apprehended appellant outside the confines of the Allegheny County Jail. Appellant had been located at the home of a friend, based on a phone call received by police.

Appellant was placed in custody of Officer Maynerik of the investigating division of the Allegheny County Sheriff's Office. Following standard procedures in effect at the time, Officer Maynerik carefully read appellant his *Miranda* rights, and then asked him if he understood his rights and if, keeping the rights in mind, he wished to talk. Although appellant did not at this point specifically state his desire to waive the right to silence, nor was he offered an available form to sign to that effect, he did proceed to answer questions placed to him.

Officer Maynerik took simple background information for the first five or ten minutes following the *Miranda* warnings, and then he asked appellant how the escape had been accomplished. Appellant proceeded to confess his escape and to describe the method used. Officer Maynerik did not repeat the *Miranda* warnings prior to shifting the focus of his questioning.

At trial, appellant's counsel objected for the *first* time to the admission of appellant's confession. Although procedurally this was not the proper time to raise such an objection, the trial judge, the Honorable Henry R. Smith, Jr., permitted testimony to be taken in the nature of a suppression hearing. Appellant's main contention at this point was the failure to repeat the *Miranda* warnings prior to shifting the focus of the questioning. The *Bussey* decision requiring explicit waiver had not yet been reached and was therefore not argued. The Commonwealth did argue, however, that an oral waiver had taken place—and appellant's counsel did hint at the lack of an explicit *Bussey*-type waiver by virtue

of the apparent failure of Officer Maynerik to utilize the written waiver forms available.

Nevertheless, appellant did not raise the lack of an explicit waiver, but only the failure to repeat the *Miranda* warnings. This failure to repeat was said to show lack of a *knowing and intelligent* waiver. The trial judge did not agree, and allowed the incriminating statements to be introduced as evidence. Appellant's counsel properly renewed his objection to the incriminating statements at the conclusion of the trial, thus preserving the issue for appeal. Counsel did not, however, argue lack of an *explicit* waiver, either during the trial or at the conclusion of trial. The issue was first raised on appeal, the decision in *Bussey* having come down in the meantime.

The Pennsylvania Supreme Court, in *Bussey*, has gone further than most jurisdictions by actually requiring an *explicit* waiver of *Miranda* rights. The language used by the court to enunciate this new and stricter standard reads as follows:

> *Miranda* surely requires warning be given and the Supreme Court of the United States has not departed from this per se requirement. Accordingly, that Court still recognizes a need for warnings as a matter of federal constitutional law, and we are bound to follow this mandate. Since that is so, we fail to understand why an explicit waiver should not also be required, and, accordingly, pursuant to our supervisory powers and interpretation of the Pennsylvania Constitution, we hold an explicit waiver is a mandatory requirement. See *Commonwealth v. Goldsmith*, 438 Pa. 83, 263 A.2d 322 (1969). *Cf. Commonwealth v. Walker*, 470 Pa. 534, 546, 368 A.2d 1284, 1290 (1977) (Eagen, J. Concurring Opinion joined by Jones, C. J. O'Brien and Pomeroy, JJ.) (standard warnings and explicit responses "most desirable.")

> Our ruling, unlike *North Carolina v. Butler*, [441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286] supra, will promote certainty in knowing an accused has waived his rights and will avoid a mountain of litigation which might otherwise

result from trying to determine what "implicity" went on in an accused's mind. *Cf. Commonwealth v. Davenport,* 471 Pa. 278, 370 A.2d 301 (1977). Our ruling will also serve to impress an accused of the importance of his decisions. *Bussey,* supra, 486 Pa. at 230–31, 404 A.2d at 1314.

The opinion in *Bussey* did not elaborate at length on what constitutes an explicit waiver, nor did it offer any guidance as to whether or not the new standard is to applied retroactively. Hence, appellant's claim of the lack of a *Bussey*-type waiver appears to be a case of first impression. We do note, however, that the *Bussey* court stated clearly that an explicit waiver meant "an outward manifestation of a waiver, such as an oral, written or physical manifestation." Id., 486 Pa. at 230 n. 11, 404 A.2d at 1315 n. 11.

■ Our first level of inquiry, therefore, goes to the question of whether or not the appellant herein *explicitly* waived his *Miranda* rights. If appellant did explicitly waive, our inquiry would cease since the holding in *Bussey* would have already been complied with regardless of whether or not it applies to appellant's case. A review of the record indicates, however, that appellant did *not* explicitly so waive his rights.

As mentioned previously, appellant was read his *Miranda* rights and was then asked if he understood them and if, keeping them in mind, he wished to talk. Since appellant did *not* answer this question, and instead merely proceeded to respond to general background inquiries, we cannot say that an explicit waiver has occurred. Indeed, this particular set of facts is strongly indicative of an *implicit* waiver, rather than an explicit one. Certainly, there was no "outward manifestation of a waiver," such as an affirmative response to the question regarding appellant's desire to speak despite his right not to (i. e. an *oral* "yes" or a *physical* nod). And, as already noted, the available forms for a *written* waiver were not used. Hence, we are unable to say that an explicit, *Bussey*-type waiver took place during the subject interrogation.

Since no explicit waiver is involved here, our next level of inquiry concerns appellant's right to question the lack of such a waiver for the first time on appeal. Appellant clearly failed to argue this point either in his post-trial motions or in his brief thereon. While this failure would ordinarily constitute waiver of appellant's right to argue the point on appeal, we are constrained to find that no such waiver of appellate rights is applicable here.

The *Bussey* decision requiring explicit waiver was reached *after* appellant had already filed his appeal. It would be manifestly unfair to hold that appellant has waived his right to even *raise* an argument based on a right that did not exist at the time it should have been raised. Indeed, there is a lengthy history of decisional law in our Commonwealth to the effect that an argument is *not* waived for appellate purposes when the principle upon which the argument is based was not enunciated until *after* the appropriate time for such argument has passed.

In *Kuchinic v. McCrory*, 422 Pa. 620, 222 A.2d 897 (1966) [Hereinafter *McCrory*], our Supreme Court granted the appellants therein a new trial so that they could receive the benefit of a newly-announced *non-constitutional* rule of law, even though the appellants had not objected to the old rule during the original trial. The *McCrory* court concluded that:

> [A contrary rule] would compel counsel to urge upon the trial court every conceivable theory, on the mere chance that before his case is finally concluded, one such theory might become the law. Since, by hypothesis, the trial court would have to overrule any objection based on his failure to adopt one of these theories, on appeal, the winning party below would be in the same position as the instant appellee. Indeed this requirement would tend to delay justice, for the court below would still have to consider and rule on each theory. Therefore, we are unwilling to conclude that the appellants' failure to inter-ject the rational of [the newly announced decision] into the trial constitutes a waiver and precludes them from

now seeking the benefit of that decision. Id., 422 Pa. at 626, 222 A.2d at 901 (footnote omitted).

Surely the rationale of *McCrory* carries no less force where, as in the instant appeal, we are faced with a *criminal* proceeding and a newly-announced rule of law that is clearly *constitutionally-based*.[3] That *McCrory* and this part of its rationale remain valid can be shown by a number of later decisions. For example, in *Commonwealth v. Cheeks*, 429 Pa. 89, 95, 230 A.2d 793, 796 (1968) [Hereinafter *Cheeks*], the court stated, "it would be manifestly unfair to hold appellant to a waiver when this waiver is alleged to have occurred at a time when neither the defendant nor his attorney had any way of knowing that there existed a right to be waived." And, in *Commonwealth v. Simon*, 446 Pa. 215, 285 A.2d 861 (1971), *Cheeks* was described as establishing the rule that "failure to raise an issue in a prior proceeding is not a waiver when the legal principles upon which the issue is premised are *newly announced* in an appellate decision rendered subsequent to the date of the prior proceeding." Hence, we must find that appellant has the right to now argue the *Bussey* explicit waiver requirement and that he has *not* waived that right.[4]

■ Since our decision in the subject action cannot be resolved by reference to either of the two "waiver" arguments, we must examine the substance of appellant's claim that he should be afforded the benefit of the decision in *Bussey*. We are compelled, therefore, to analyze the situation in terms of the approach outlined in *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 146 L.Ed.2d 601 (1965) [Hereinafter *Linkletter.*] This is so because the *Linkletter* approach to retroactive application was clearly adopted by our Supreme Court in *Commonwealth v. Miller*, 490 Pa. 456, 417 A.2d 128 (1980), cert. den. 449 U.S. 1113, 101 S.Ct. 924, 66 L.Ed.2d 842 (1981) [Hereinafter *Miller.*]

3. See the quotation from *Bussey*, contained herein, supra.

4. Accord, see *Commonwealth v. Ernst*, 476 Pa. 102, 108, 381 A.2d 1245, 1248 (1978) and cases cited therein. See also *Tice v. Nationwide Ins. Co.*, 284 Pa.Super. 220, 425 A.2d 782, (1980) (Concurring Opinion by Spaeth, J.)

The *Linkletter* approach is a three-pronged test involving (1) the purpose to be served by the new rule, (2) the extent of reliance by law enforcement authorities on the old standard, and (3) the effect on the administration of justice of retroactive application. Utilizing the *Linkletter* test, we see that the first prong of the test concerns the purpose to be served by the change sought to be applied retroactively. This is the primary consideration according to the *Miller* court. *Miller*, supra, 490 Pa. at 472, 417 A.2d at 136. It is at this juncture in the *Linkletter* test where we examine the reasons for the change, both stated and apparent, and the effect of the change on truth-finding processes.

Examining the relevant language in *Bussey*, we note that the reason for the change to an *explicit* waiver of Miranda rights is to "promote certainty," "avoid a mountain of litigation which might otherwise result from trying to determine what 'implicitly' went on in an accused's mind," and "to impress on an accused the importance of his decision." *Bussey*, supra, 486 Pa. at 231, 404 A.2d at 1314. Such reasons, while clearly laudable, are related primarily to the need for clarity and judicial convenience. Secondly, the effect of the *Bussey* holding, needless to say, is *not* to enhance the truth-finding process. On the contrary, the net affect of the explicit waiver requirement will be to amplify the evidentiary exclusionary rule, the primary purpose of which is to deter unlawful police conduct. The *Miller* court specifically held that such an effect strongly supports prospective application. *Miller*, supra, 490 Pa. at 472–3, 417 A.2d at 136. It is clear, then, that the relevant factors under the purpose prong of the *Linkletter* test militate strongly against retroactive application of the *Bussey* standard, either in the instant action or in general.[5]

As to the other two prongs of the *Linkletter* test, they also lead us to say that *Bussey* is not to be retroactively applied. Since the explicit waiver required in *Bussey* is so

5. Apparently, subjective retroactive application of a given holding is possible under certain circumstances. See, e. g. *Commonwealth v. Ernst*, 476 Pa. 102, 106, 381 A.2d 1245, 1247 (1977).

unusually strict and has been rejected by all but a few courts,[6] there can be no question that the extent of reliance by law enforcement officers on the old standard has been very great. They could not possibly have anticipated such a change. And we take judicial notice as did the *Miller* court in their decision,[7] of the adverse impact on the administration of justice which would result from the retroactive application sought by appellant herein. The new standard advanced in *Bussey* will be difficult enough to administer prospectively without the problems attendant in digging up the past in literally thousands of cases. Hence, we must deny the retroactive application for cases pending on direct review sought by appellant herein.

For the foregoing reasons, judgment of sentence is hereby affirmed.

**6.** See *North Carolina v. Butler*, 441 U.S. 369, 372, 99 S.Ct. 1755, 1758, 60 L.Ed.2d 286 (1979).

**7.** *Miller*, supra, 490 Pa. at 473, 417 A.2d at 136.