505 A.2d 310
**COMMONWEALTH of Pennsylvania**
v.
**Lawrence M. SPEAKS, Appellant.**
Superior Court of Pennsylvania.
Submitted Sept. 17, 1985.
Filed Feb. 21, 1986.

150

Lawrence A. Kalikow, Assistant Public Defender, Harrisburg, for appellant.

Katherene E. Holtzinger-Conner, Deputy District Attorney, Harrisburg, for Com., appellee.

Before WICKERSHAM, CIRILLO and JOHNSON, JJ.

CIRILLO, Judge:

This is an appeal from a judgment of sentence imposed by the Court of Common Pleas of Dauphin County. Following a non-jury trial, Lawrence Speaks, appellant, was found guilty of possession with intent to deliver marijuana. 35 P.S. § 780–113(a)(30). Appellant was sentenced to pay the cost of the proceedings, a fine of $300.00, and to be imprisoned in the county prison for not less than one month nor more than six months.

The evidence produced at trial revealed that a Detective Teel, accompanied by five other officers, arrived at a resi-

dence for the purpose of executing a search warrant for narcotics. Appellant and two unidentified persons were inside the premises at the time. After knocking on the door, the officers identified themselves as police and advised appellant that they had a search warrant. Upon gaining entry to the premises, Officer Teel read appellant the contents of the warrant, advised him of his *Miranda* rights and questioned him as to whether he understood those rights. Appellant responded in the affirmative to this question and was then immediately asked if there was any marijuana in the house. Appellant answered yes and indicated that the marijuana was located in the living room closet. A search of the closet yielded six bags of marijuana. After these items were discovered, appellant was searched and a bag of marijuana was found in his pocket. The police also seized $240.00 in currency from the premises, including marked bills that Officer Teel had given to an informant the previous day for the purpose of a controlled buy.

Appellant raises a number of issues on appeal: 1) whether the suppression court erred in ruling that appellant validly waived his *Miranda* rights; 2) whether the suppression court erred in refusing to suppress the marijuana seized from appellant's person; 3) whether the evidence presented was sufficient as a matter of law to sustain a guilty verdict; and 4) whether the trial court erred in denying appellant's request seeking disclosure of the identity and whereabouts of the informant who participated in the controlled buy. We find no merit in any of the issues raised by appellant and we therefore affirm.

■ Initially, appellant contends the suppression court erred in ruling that he validly waived his *Miranda* rights. After a careful review of the record, we conclude that appellant explicitly waived his *Miranda* rights as required by *Commonwealth v. Bussey*, 486 Pa. 221, 404 A.2d 1309 (1979), and the suppression court did not err in so holding.

In reviewing an order denying a motion to suppress, our function is to determine whether the factual findings of the

suppression court are supported by the record. *Commonwealth v. Scatena*, 332 Pa.Super. 415, 481 A.2d 855 (1984); *Commonwealth v. Chamberlain*, 332 Pa.Super. 108, 480 A.2d 1209 (1984). There is credible evidence of record that Speaks explicitly waived his *Miranda* rights.

In *Commonwealth v. Bussey, supra*, the Supreme Court held that a waiver of *Miranda* rights must be explicit in order to be effective in Pennsylvania. In defining explicit waiver, the *Bussey* Court stated that it "mean[t] an outward manifestation of a waiver such as an oral, written or physical manifestation." *Bussey*, 486 Pa. at 230 n. 11, 404 A.2d at 1314 n. 11. Additionally, the Court asserted that by requiring an explicit waiver of Miranda, it "d[id] not mean to imply [that] an express waiver for each and every right [was] necessary." *Id.*, 486 Pa. at 231 n. 12, 404 A.2d at 1314, 1309 n. 12.

Under the facts of the case *sub judice*, it is apparent that appellant's waiver of his Miranda rights complied with the requirements promulgated in *Bussey*. After reading appellant the contents of the search warrant and giving him his *Miranda* warnings, Officer Teel specifically asked appellant if he understood the *Miranda* rights. Appellant answered in the affirmative and only then did Officer Teel question him as to whether there was any marijuana in the house. In response to this question, appellant indicated to the officer that there was marijuana in the living room closet on the first floor. Appellant's unequivocal recital of his understanding of these rights combined with his response to the aforementioned question clearly constituted an explicit waiver of his *Miranda* rights.

The *Bussey* Court succintly and unambiguously defined an explicit waiver as "an outward manifestation of a waiver such as an oral, written or physical manifestation." *Bussey*, 486 Pa. at 230 n. 11, 404 A.2d at 1314 n. 11. Appellant's statement that he understood his rights followed immediately by his incriminatory answer to the officer's question was tantamount to a physical manifestation of his present intent to waive his rights. Such a physical manifes-

tation qualifies as an explicit waiver under the definition provided by the *Bussey* Court. While such statements as "I want to talk," or "I waive my rights," easily satisfy the requirements of *Bussey,* these assertions are not the sole means by which an accused may explicitly waive his rights.

By requiring an express waiver of *Miranda* rights, the *Bussey* Court hoped to limit the number of cases in which the ultimate finding of a waiver depended upon the multitude of manifestations which occur between an expression of understanding by an accused and his giving a statement. The time lapse between the reading of *Miranda* rights and the accused's incriminating statement was a significant consideration for the *Bussey* Court in determining whether a waiver was explicit.

In *Bussey,* there was a delay of a quarter of an hour between the reading of the *Miranda* warnings and the accused's decision to make a statement. Additionally, Bussey did not specifically acknowledge his understanding of the rights when they were read to him. At the particular time that the accused incriminated himself, he again did not acknowledge his understanding of his *Miranda* rights nor indicate that he waived such rights.

The instant case is distinguishable on this very point. Officer Teel read appellant his rights, appellant indicated his understanding of these rights and he immediately thereafter answered the officer's question in an incriminating manner. The time span between the warnings, the expression of understanding and the giving of the statement was minimal, a matter of one or two minutes. No consideration need be given to Speaks' actions or thoughts occurring between his expression of understanding and his giving of a statement; they occurred almost simultaneously. The suppression court could determine with certainty that appellant waived his rights without delving into what was going on in the accused's mind at the time he incriminated himself.

Appellant's reliance on *Commonwealth v. Nixon,* 288 Pa.Super. 78, 431 A.2d 296 (1981), is misplaced. In *Nixon,* appellant was read his *Miranda* rights and was then asked

if he understood them and if, keeping them in mind, he wished to talk. Appellant never answered these questions. He merely started to answer general background inquiries. Obviously, appellant in *Nixon* never explicitly waived his rights—there was no outward manifestation of a waiver either orally, physically, or in writing.

Once again, this case is easily distinguishable. Not only was appellant warned of his *Miranda* rights but the officer expressly asked him if he understood these rights. Speaks did not merely start answering questions but explicitly stated that he understood his *Miranda* rights, which include the right to remain silent.

The *Bussey* standard is difficult to apply because the Court "did not elaborate on what constitutes an explicit waiver." *Nixon*, 288 Pa.Super. at 82, 431 A.2d at 297. Therefore, the Court must be careful not to extend *Bussey* beyond its intended scope. *Bussey* did not hold that for a waiver to be deemed explicit an accused must state "I want to talk," or "I waive my rights." For our Court to now so require would broaden *Bussey* well beyond its original intended purview.

Even if the suppression court erred in ruling that appellant validly waived his *Miranda* rights, it was harmless error.

> The doctrine of harmless error is a technique of appellate review designed to advance judicial economy by obviating the necessity for a retrial where the appellate court is convinced that a trial error was harmless beyond a reasonable doubt. Its purpose is premised on the well-settled proposition that "[a] defendant is entitled to a fair trial but not a perfect one." *Lutwak v. United States*, 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593.

*Commonwealth v. Thornton*, 494 Pa. 260, 431 A.2d 248 (1981).

■ The evidence pertaining to the discovery of the marijuana was properly admitted at appellant's trial on the ground that it would ultimately or inevitably have been

discovered even if no violation of any constitutional provision had taken place. *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). In *Nix*, the Court stated that "the exclusion of physical evidence that would inevitably have been discovered adds nothing to either the integrity or fairness of a criminal trial." *Id.* 467 U.S. at 446, at 389, 104 S.Ct. at 2510.

In the present case, Officer Teel arrived at appellant's residence armed with a valid search warrant. The warrant enabled Teel to search the residence for "marijuana, cocaine, heroin, all drug related paraphernalia, drug records, and proceeds from drug sales." The marijuana discovered would have been uncovered by the police regardless of Speaks' statement. Even if Teel's failure to ask Speaks if he wanted to talk or waive his rights constituted error, the evidence in question would inevitably have been discovered without reference to such error. "In [this] situation, the State has gained no advantage at trial and [Speaks] has suffered no prejudice." *Nix*, 467 U.S. at 447, 104 S.Ct. at 2511, 81 L.Ed.2d at 390. As the Court stated in *Nix*, "suppression, in these circumstances, would do nothing whatever to promote the integrity of the trial process, but would inflict a wholly unacceptable burden on the administration of criminal justice." *Nix*, 467 U.S. at 447, 104 S.Ct. at 2511, 81 L.Ed.2d at 389. For these reasons, we find that appellant's waiver of his *Miranda* rights was valid.

■ Additionally, appellant alleges the suppression court committed error when it refused to suppress the marijuana seized from his person. Appellant was searched after he led police to the marijuana in the living room closet. Under these circumstances, we are compelled to hold that the search of appellant's person was reasonable. Appellant answered the door when the police arrived and told the officers where the marijuana was located and led the officers to the marijuana. At that point, the police had probable cause to arrest appellant for illegal possession of marijuana. The police found him in constructive possession of an amount of marijuana which was twice the amount the

legislature has deemed a small amount. 35 P.S. § 780–113(a)(31).

Appellant contends that the search was illegal because it was not a search incident to a lawful arrest. The fact that he was not formally arrested until after the search is irrelevant. The time of the formal arrest is not controlling, but rather the point at which "appellant could reasonably assume that he was under arrest." *Commonwealth v. Crissy*, 304 Pa.Super. 38, 42, 450 A.2d 89, 91 (1982). The police had read appellant his *Miranda* rights, located a sizeable quantity of marijuana under appellant's direction and searched appellant subsequent to the discovery of the marijuana. These factors were sufficient to lead appellant "to believe that the officer had subjected [appellant] to his actual control and will." *Crissy*, 304 Pa.Super. at 42, 450 A.2d at 91.

Appellant's reliance on *Commonwealth v. Luddy*, 281 Pa.Super. 541, 422 A.2d 601 (1980) is misplaced. In the case *sub judice*, police searched appellant only after he led them to the marijuana. The discovery of this contraband and appellant's knowledge of its whereabouts was sufficient to establish probable cause to arrest him. Accordingly, the search incident to the arrest was proper and the lower court did not err when it refused to suppress the marijuana seized from Speaks' person.

Appellant also argues that the evidence presented at trial was insufficient to sustain the verdict of guilty. More specifically, he contends that the Commonwealth failed to prove possession with intent to deliver. The test for determining whether the evidence presented is sufficient to support the verdict is well-established.

> The test for sufficiency of the evidence in a criminal case is whether, viewing all of the evidence admitted at trial in a light most favorable to the Commonwealth, there is sufficient evidence to enable the trier of fact to find every element of the crime beyond a reasonable doubt.

*Commonwealth v. Tribble*, 502 Pa. 619, 620, 467 A.2d 1130, 1131 (1983). *Accord Commonwealth v. Smith*, 333 Pa.Su-

per. 155, 481 A.2d 1352 (1984); *Commonwealth v. Leather-bury*, 322 Pa.Super. 222, 469 A.2d 263 (1983).

In the case *sub judice*, the evidence clearly demonstrated appellant's possession of marijuana and his intent to deliver. The evidence presented at trial revealed that six bags of marijuana (65.5 grams in all) were discovered in the living room closet. The prosecution was required to demonstrate that appellant possessed the power to control the contraband and the intent to exercise that control, i.e., constructive possession. *Commonwealth v. Macolino*, 503 Pa. 201, 469 A.2d 132 (1983). Appellant's constructive possession of the marijuana in the closet may be inferred from the totality of the circumstances. *Commonwealth v. Macolino, supra; Commonwealth v. Thompson*, 286 Pa.Super. 31, 428 A.2d 223 (1981). Appellant's possession may also be established by circumstantial evidence. *Commonwealth v. Bentley*, 276 Pa.Super. 41, 419 A.2d 85 (1980).

■ We hold that the Commonwealth's evidence in this case sufficiently demonstrated beyond a reasonable doubt that appellant had constructive possession of the marijuana and the intent to deliver it. The evidence clearly demonstrated that appellant had access to the contraband, the power to control it, and the requisite intent to exercise control over it. *Commonwealth v. Gilchrist*, 255 Pa.Super. 252, 386 A.2d 603 (1978). Additionally, the Commonwealth established that there were six bags stored in the living room closet containing 63.5 grams of marijuana; appellant admitted that the contents of the bags belonged to him; a search of the premises revealed the presence of packaging materials commonly used in the sale of marijuana; a controlled buy occurred within forty-eight hours of the execution of the search warrant; the marked bills used in the controlled buy were recovered in the search of the premises; and appellant was present at the time of the controlled buy. Taken together, these facts clearly support the trier of fact's finding that appellant not only was in possession of the marijuana, but did so with the intent to deliver.

Appellant's final issue concerns the question of whether the trial court properly denied appellant's motion for disclosure of the confidential informant. In determining whether a particular case favors disclosure, we must consider the crime charged, the possible defenses and the significance of the testimony. *Commonwealth v. Carter*, 427 Pa. 53, 233 A.2d 284 (1967); *Commonwealth v. Davis*, 318 Pa.Super. 507, 465 A.2d 669 (1983). However, our fundamental concern is fairness. "The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." *Carter*, 427 Pa. at 59, 233 A.2d at 287 (quoting *Roviaro v. United States*, 353 U.S. 53, 60–62, 77 S.Ct. 623, 627–28, 1 L.Ed.2d 639 (1957)).

■ Appellant contends that the identity of the informant must be disclosed and that the informant must testify regarding the controlled buy. We cannot accept these contentions. In *Carter*, the Supreme Court adopted the qualified privilege rule with respect to disclosure of confidential informants. This privilege permits the Commonwealth "to refrain from disclosing the identity of an informer" and "limits the prosecution's duty to make available to the defense the names and whereabouts of all material eyewitnesses." *Carter*, 427 Pa. at 55–56, 233 A.2d at 285. There is no fixed rule as to when the privilege is applicable.

In this case, appellant merely asserts that the identity of the informant would aid his defense. This claim is insufficient to outweigh the public's interest in protecting the flow of information from informants to the police. *Commonwealth v. Herron*, 475 Pa. 461, 380 A.2d 1228 (1977); *Commonwealth v. Fleck*, 324 Pa.Super. 227, 471 A.2d 547 (1984); *Commonwealth v. Dorsey*, 266 Pa.Super. 442, 405 A.2d 516 (1979). Appellant failed to demonstrate that there was a "reasonable possibility that the informant could give testimony that would tend to exonerate [appellant] so that it would be unfair to withhold it." *Fleck*, 324 Pa.Super. at 235, 471 A.2d at 550.

Judgment of sentence affirmed.

160

JOHNSON, J., files a dissenting opinion.

JOHNSON, Judge, dissenting:

I agree with the majority that Appellant waived his *Miranda* rights. However, I believe that this waiver was implicit, and not explicit, as is required by the Pennsylvania Supreme Court in *Commonwealth v. Bussey*, 486 Pa. 221, 404 A.2d 1309 (1979). Accordingly, I dissent and I would reverse the judgment of sentence and remand for a new trial.

The *Bussey* court defined explicit waiver as "an outward manifestation of a waiver such as an oral, written or physical manifestation" *Id.*, 486 Pa. at 230 n. 11, 404 A.2d at 1314 n. 11. *Bussey* discussed the United States Supreme Court case of *North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979), saying that:

the United States Supreme Court held an implicit waiver of rights could be found where an accused expresses understanding of his rights and gives a statement without expressly waiving his rights. We could distinguish the instant case on the basis that Bussey never expressed an understanding of his rights prior to incriminating himself at 1:45 a.m., but we decline to do so and we decline to follow *North Carolina v. Butler*, supra.

*Bussey*, 486 Pa. at 230, 404 A.2d at 1314. Thus, our supreme court made it clear that a waiver, which consists of an expression of understanding of rights plus an inculpatory statement, does not qualify as an explicit waiver. *Id.* It may be enough to constitute an implicit waiver, but is insufficient to effectively waive appellant's *Miranda* rights applying Pennsylvania state law.

The explicit waiver requirement is discussed in *Commonwealth v. Nixon*, 288 Pa.Super. 78, 431 A.2d 296 (1981). In *Nixon*, a panel of our Court stated:

As mentioned previously, appellant was read his *Miranda* rights and was then asked if he understood them and if, keeping them in mind, he wished to talk. Since appellant did *not* answer this question, and instead mere-

ly proceeded to respond to general background inquiries, we cannot say that an explicit waiver has occurred. Indeed, this particular set of facts is strongly indicative of an *implicit* waiver, rather than an explicit one. Certainly, there was no "outward manifestation of a waiver," such as an affirmative response to the question regarding appellant's desire to speak despite his right not to (i.e. an *oral* "yes" or a *physical* nod). And, as already noted, the available forms for a *written* waiver were not used. Hence, we are unable to say that an explicit, *Bussey-* type waiver took place during the subject interrogation.

*Id.*, 288 Pa.Superior Ct. at 82, 431 A.2d at 298. The *Bussey* decision was reached after appellant Nixon had filed his appeal. The *Nixon* court refused to apply *Bussey* retroactively, and affirmed the judgment of sentence. However, the reasoning of the *Nixon* court and the interpretation the *Nixon* court gives to *Bussey* is in keeping with the mandate of our supreme court in *Bussey*. A different interpretation, in my view, renders the requirement of an explicit waiver meaningless.

As noted by the court in *Nixon*, a physical manifestation of waiver would exist where an appellant nods his head in answer to a question regarding appellant's desire to speak. *Nixon, supra.* It is not a physical manifestation of explicit waiver for an appellant to merely respond to the substantive police question and thereby incriminate himself. An immediate inculpatory response may indicate an implicit waiver, but certainly not an explicit one. The fact that appellant acknowledged that he understood his rights does not mean that he also waived them. It is a logical inference to say that when an appellant responds to substantive police questions he is waiving his right to remain silent, etc. However, the thrust of *Bussey* is that Pennsylvania courts are not to draw inferences that a waiver exists; rather, they are to look for an explicit waiver. To equate an inculpatory response by an appellant with an explicit waiver is to render the word "explicit" meaningless surplusage.

The majority distinguishes *Bussey*, in part, based on the fact that in *Bussey* there was a delay of a quarter of an hour between the reading of the *Miranda* warnings and the accused's statement. The majority notes that appellant Speaks' expression of understanding and his giving of a statement occurred almost simultaneously. I find this to be all the more indicative of a lack of explicit waiver. Our supreme court stated in *Bussey* that "by our ruling, we seek to promote a deliberate and conscious decision *before any statement is given*. Common sense teaches persons often speak before they think." *Bussey, supra*, 486 Pa. at 231 n. 14, 404 A.2d at 1314 n. 14 (emphasis in original). Such was the case *sub judice*. To find that an explicit waiver exists under the facts before us ignores the purpose and express language of *Bussey*. Given my position on this issue, I would not reach the other issues raised by appellant.