COMMONWEALTH of Pennsylvania,
Appellee,

v.

Melvin MEACHUM, Appellant.

Superior Court of Pennsylvania.

Submitted Jan. 26, 1998.

Filed May 12, 1998.

---

Stephen G. Heckman, Asst. Public Defender, for appellant.

Patricia E. Coonahan, Asst. Dist. Atty., Norristown, for Com., appellee.

Before KELLY, STEVENS and HOFFMAN, JJ.

STEVENS, Judge:

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Montgomery County following Appellant's conviction on the charges of robbery, theft, and making terroristic threats. Appellant contends (1) the suppression court should have suppressed the statements he made to the police, (2) the victim's pre-arrest identification was obtained in an overly suggestive fashion, and (3) the verdict was against the weight of the evidence. We affirm.

Appellant's first contention is that the suppression court should have suppressed the statements he made to the police. "In reviewing the denial of a motion to suppress, our responsibility is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings." *Commonwealth v. Lopez,* 415 Pa.Super. 252, 609 A.2d 177, 178 (1992). If the suppression court held for the prosecution, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. *Commonwealth v. Long,* 455 Pa.Super. 337, 688 A.2d 198 (1996). "When the evidence supports the suppression court's findings of fact, we may reverse only when the legal conclusions drawn from those facts are erroneous." *Commonwealth v. El-*

*liot,* 416 Pa.Super. 499, 611 A.2d 727, 728 (1992) (citation omitted).

Applying the standard of review, we conclude that the facts are as follows: On January 17, 1996, at approximately 4:30 p.m., Joseph Carpenter, a bartender at the "Muddy Duck Tavern," was robbed at gunpoint. As the suspect fled the scene, the bartender pushed an alarm button, thereby summoning the police. The bartender also telephoned his roommate, who lived near the tavern, described the incident to him, and asked him to go outside and look for the suspect. Mr. Carpenter's roommate went outside, saw a man who matched the suspect's description enter a vehicle, and saw the vehicle's license plate number.

After the police arrived, the bartender gave them a description of the suspect. Mr. Carpenter's roommate provided the responding officers with the suspect's automobile license plate number. The officers were then able to determine that the automobile was registered to Appellant, and they broadcast this information over the police radio. Philadelphia Police Officers Lamont Adams and Anthony Washington, both of whom were on duty, heard the broadcast, proceeded to Appellant's residence, and discovered a vehicle matching the description of the suspect's vehicle parked in the driveway.

The officers, who were in plainclothes, approached the front door of Appellant's residence and asked Appellant to "step outside." The officers then explained that they were investigating a recent robbery, which occurred at the "Muddy Duck." Shortly thereafter, approximately twenty minutes after the robbery, the bartender was escorted to Appellant's residence and he positively identified Appellant as the person who had robbed him. Appellant was arrested and transported to police headquarters.

Approximately two and one-half hours after arrival, Appellant was escorted to an interview room by Police Officers Robert Fuss, Jr. and Richard Nilsen. The officers asked Appellant if he would be willing to answer some questions, and Appellant declared that "he was willing to cooperate and that he had nothing to hide." N.T. 7/17/96 p. 41. He also indicated that he "wished to give

a statement . . . because he wanted to clear the matter and help [the police] find whoever did [the robbery]." N.T. 7/17/98 p. 41. Appellant was issued the proper *Miranda*[1] warnings and made several inculpatory statements. Specifically, he admitted that he was the person who had robbed the "Muddy Duck." He told Officer Nilsen that he robbed the tavern because he needed money to support his heroin addiction. Officer Nilsen asked Appellant whether he would be willing to put his confession in writing, and Appellant indicated affirmatively.

While the officers retrieved a typewriter, Appellant was given a beverage, food, and cigarettes. After the officers returned with the typewriter, Officer Nilsen again issued Appellant his *Miranda* warnings. Appellant's statement was reduced to a typewritten document, which Appellant ultimately reviewed and signed.

Appellant was charged with various offenses in connection with the robbery. He filed a pre-trial motion seeking to suppress the statements made to the police, and the pre-trial identification made by the victim. Following a hearing, the suppression court entered an order denying Appellant's motion to suppress. Appellant proceeded to a trial by jury and was convicted of robbery and related offenses. However, he filed a post-verdict motion seeking a new trial, which was granted.

Appellant subsequently filed a motion seeking to relitigate his suppression issues. The motion was denied, and, thereafter, Appellant proceeded to another jury trial. At the conclusion of his second trial, Appellant was convicted of robbery, theft, and making terroristic threats. Following sentencing, he filed a post-verdict motion challenging the weight of the evidence, which was denied by the trial court. This appeal followed.

Appellant contends that the statements made by him to the police should have been suppressed since he did not explicitly waive his right to counsel prior to being interrogated as is required by *Commonwealth v. Bussey*, 486 Pa. 221, 404 A.2d 1309 (1979).[2]

 "The Commonwealth bears the burden of establishing whether a defendant knowingly and voluntarily waived his right [to counsel]." *Commonwealth v. Hall*, 549 Pa. 269, 701 A.2d 190, 197 (1997). In *Bussey, supra,* our Supreme Court held that a waiver of *Miranda* rights must be explicit in order to be effective. In defining explicit waiver, the *Bussey* court stated that it "mean[t] an outward manifestation of a waiver such as an oral, written or physical manifestation." *Bussey*, 486 Pa. at 230 n. 11, 404 A.2d at 1314 n. 11. Additionally, our Supreme Court indicated that by requiring an explicit waiver of *Miranda*, it "d[id] not mean to imply [that] an express waiver for each and every right [was] necessary." *Id.* at n. 12. *See Commonwealth v. Speaks*, 351 Pa.Super. 149, 505 A.2d 310 (1986).

Here, prior to questioning Appellant verbally, Officer Fuss read Appellant the proper *Miranda* warnings from a printed card used by the police department. After the officer read the warnings, he gave the card to Appellant, who was given an opportunity to read it. Appellant then signed the card. Appellant's signature on the card clearly indicates that he understood his rights and that he was willing to answer questions. Appellant then made numerous, verbal inculpatory statements to the police officers.

 We conclude that under *Bussey, supra,* Appellant's signature on the printed card indicating that he understood his rights followed immediately by his incriminatory statements was tantamount to a physical manifestation of his present intent to waive his right to counsel. *Commonwealth v. Hughes*, 536 Pa. 355, 639 A.2d 763 (1994); *Speaks, supra.* Such a physical manifestation qualifies as an explicit waiver under the definition provided by our Supreme Court. *Hughes, supra.* "While such statements as

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. Appellant has failed to indicate whether he is challenging his verbal or written confession. For the sake of judicial economy, we shall analyze both confessions. We note that there is no dispute that Appellant was subjected to custodial interrogation, and, therefore, *Miranda* warnings and a valid waiver thereof was required prior to Appellant being questioned by the police.

'I want to talk,' or 'I waive my rights,' easily satisfy the requirements of *Bussey,* these assertions are not the sole means by which an accused may explicitly waive his rights." *Speaks,* 505 A.2d at 313. Accordingly, the suppression court did not err in failing to suppress Appellant's verbal confession.

Following Appellant's verbal confession, the police asked Appellant whether he would be willing to reduce his confession to a written document. Appellant answered affirmatively and was permitted a "break" while the officers retrieved a typewriter. After the officers returned, and prior to Appellant dictating his statement, Appellant was again read his *Miranda* warnings from the printed card. Officer Nilsen specifically asked Appellant whether he was willing to waive his rights and Appellant verbally responded, "Yes." Officer Nilsen then began typing the confession in a question and answer format.

The first page of the confession contained six questions relating to Appellant's *Miranda* rights. After each question was typed, Officer Nilsen read it to Appellant, and secured a verbal answer with regard thereto. Question number five read as follows: "Do you want either to talk with a lawyer at this time, or to have a lawyer with you while we ask you questions?" Appellant verbally responded, "No." After the six questions were typed and verbally answered by Appellant, Officer Nilsen laid the paper on the desk and continued typing the remaining portions of Appellant's confession.

After the entire confession was typed, Appellant was asked to review it, write an answer to each of the *Miranda* questions, initial each *Miranda* answer, and initial each answer of the actual confession. As to *Miranda* question number five, Appellant answered "No (?)." After Appellant initialed the entire confession, he handed it to the police. After reviewing Appellant's written answers, the officers asked Appellant the reason for his answer to question number five. Appellant replied that he was "thinking now about possibly having an attorney." N.T. 7/17/96 p. 81. The police officers did not respond and the interview concluded. Prior to Appellant's written "No(?)" and his verbal statement relating thereto, he made no indication that he wished to consult with an attorney. N.T. 7/17/96 p. 81.

■ Based on the aforementioned facts, we hold that Appellant explicitly waived his right to counsel prior to dictating his written confession. Not only did he affirmatively state that he waived his *Miranda* rights in general, he also specifically stated that he did not wish to speak to an attorney or have an attorney present during questioning. Clearly, such affirmative, verbal statements constitute waiver under the dictates of *Bussey, supra.*

■ Moreover, assuming, *arguendo,* that Appellant's written answer to *Miranda* question number five and his statement relating thereto can be construed as a valid request for an attorney, such request was made after the officers' questioning was finished. As Appellant was reviewing the typewritten confession, he answered "No?" to question number five; however, he then adopted the confession and indicated that it was a true, accurate, non-coerced document. Appellant neither stopped the reviewing process nor indicated that he would not review and adopt the typewritten confession without the assistance of counsel. In fact, Appellant's concerns about his right to counsel were not revealed to the officers until after he had signed and adopted the entire confession, and then handed it to the officers. As such, we determine that Appellant's answer to question number five, and his explanation with regard thereto, at most manifested his intent only to invoke his right to counsel as to any future action by the police, and did not affect the legality of the officers' action to that point. Accordingly, the suppression court did not err in finding that Appellant explicitly waived his right to counsel as to his written confession.

Having found that Appellant explicitly waived his right to counsel, we must next determine whether his waiver was negated by the circumstances surrounding the waiver, thereby rendering his confession unknowing, involuntary, and unintelligent. Appellant claims that during his confession he was under the influence of heroin, the police threatened to charge him with other crimes if he

did not confess to the "Muddy Duck" robbery, and he was subjected to physical and psychological coercion. We conclude that the evidence does not support Appellant's contentions.

■ As our Supreme Court has stated:

Although there is no single litmus-paper test for determining the voluntariness of a confession, it must be established that the decision to speak was a product of a free and unconstrained choice of its maker ... All attending circumstances must be considered in this determination. These include the duration and methods of interrogation; the length of delay between arrest and arraignment; the conditions of detainment; the attitudes of the police toward defendant; defendant's physical and psychological state; and all other conditions present which may serve to drain one's power of resistance to suggestion or to undermine one's self-determination.

*Commonwealth v. Hughes*, 521 Pa. 423, 555 A.2d 1264, 1273 (1989) (quotation omitted).

■ In this case, Appellant indicated that *at the time of the robbery* he was not feeling well because he was "high" on heroin. However, when he gave his confession to the officers, approximately five and one-half hours after the robbery, there was no indication that he was under the influence of heroin. In fact, Officer Fuss, a trained narcotics agent, specifically testified that when Appellant was interrogated he did not exhibit any signs of being under the influence of drugs or alcohol, and that, in his expert opinion, Appellant was not under the influence. N.T. 7/18/96 p. 84. During his testimony, Appellant admitted that his "high was wearing off" by the time he was questioned by the police. N.T. 7/18/96 p. 123.

As for Appellant's claims that he was threatened by the police and subjected to physical and psychological coercion, the suppression court found the claims to be incredible. Apparently, the court believed the testimony of Officers Foss and Nilsen. N.T. 7/18/96 pp. 152–153. Officer Foss specifically testified that Appellant was never threatened in any manner. N.T. 7/18/96 p. 82. In addition, both officers testified that prior to and during questioning Appellant received food, beverages, cigarettes, and permission to use the bathroom. N.T. 7/18/96 pp. 49, 90, 93, 94. There is no evidence that the officers physically touched Appellant in any manner, made any promises of leniency in exchange for his confession, or engaged in subterfuge designed to induce him to confess. *See Hughes, supra.*

■ Appellant's next contention is that the suppression court erred in failing to suppress the victim's pre-arrest identification because it was so unduly suggestive as to render it unreliable. "In reviewing the propriety of identification evidence, the central inquiry is whether, under the totality of the circumstances, the identification was reliable." *McElrath v. Commonwealth*, 405 Pa.Super. 431, 592 A.2d 740, 742 (1991). The purpose of a "one on one" identification is to enhance reliability by reducing the time elapsed after the commission of the crime. *Commonwealth v. Bullock*, 259 Pa.Super. 467, 393 A.2d 921 (1978). "Suggestiveness in the identification process is but one factor to be considered in determining the admissibility of such evidence and will not warrant exclusion absent other factors." *McElrath*, 592 A.2d at 742. As this Court has explained, the following factors are to be considered in determining the propriety of admitting identification evidence: "the opportunity of the witness to view the perpetrator at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the perpetrator, the level of certainty demonstrated at the confrontation, and the time between the crime and confrontation." *McElrath*, 592 A.2d at 743 (citation omitted). The corrupting effect of the suggestive identification, if any, must be weighed against these factors. *Commonwealth v. Sample*, 321 Pa.Super. 457, 468 A.2d 799 (1983). Absent some special element of unfairness, a prompt "one on one" identification is not so suggestive as to give rise to an irreparable likelihood of misidentification. *Commonwealth v. Brown*, 417 Pa.Super. 165, 611 A.2d 1318 (1992).

Appellant contends that there was a special element of unfairness in this case. Specifically, he alleges that it was unfair for the victim to view him while he was standing

between Officers Adams and Washington since neither officers' description matched his description. He contends that the officers' clothing was not similar to his and that both officers weighed more than him.

Assuming, *arguendo*, that the officers' appearance[3] was not similar to Appellant's appearance, this fact alone would not require suppression of the identification. In *Commonwealth v. Allen*, 287 Pa.Super. 88, 429 A.2d 1113 (1981), this Court upheld an identification made of three robbery suspects while they were handcuffed and sitting in a police van. We specifically stated that such facts do not constitute special elements of unfairness. *Allen, supra.* The identification in this case occurred under circumstances much less suggestive than those found in *Allen, supra.* Here, Appellant was standing between two plainclothes officers when he was identified. He was neither handcuffed nor sitting in a police cruiser. Furthermore, the victim was led to believe that the officers were possible suspects. Accordingly, we conclude that the identification procedures employed by the police were not unduly suggestive.

We further conclude that the Commonwealth met its burden with regard to the other factors to be considered in determining the propriety of admitting the identification into evidence. In the case *sub judice*, the victim was able to obtain a "good look" at the perpetrator's face, having had an unobstructed, close view in a well-lit area for more than ten minutes. Moreover, the identification was prompt. The victim was transported to Appellant's residence and identified him as the perpetrator only twenty minutes after the robbery occurred.

In addition, the victim's description of the perpetrator was accurate. Shortly after the robbery occurred, the victim described the perpetrator as being a thirty-year-old African American male standing approximately six feet tall. This description, albeit general, fits Appellant's description. He further described the perpetrator as wearing a black wool cap, a blue-hooded sweatshirt, a black waist-length jacket, red sweat pants, and sunglasses. While there was a discrepancy between the description of the suspect's clothing and Appellant's clothing at the time of the identification, this fact would not require the suppression of the identification. It is clear that Appellant had ample opportunity and means to change his clothing prior to the identification and that the victim clearly viewed Appellant's facial features. Moreover, at the pre-arrest viewing, the victim's identification was unequivocal, and, at trial, the victim testified that he had no doubt about his pre-arrest identification. Accordingly, the suppression court did not err in failing to suppress the victim's pre-arrest identification.

[16] Appellant's final argument is that the verdict was against the weight of the evidence. Specifically, he argues that, without the proper admission of his confessions and pre-arrest identification, there was no credible evidence supporting the jury's finding of guilt. In light of our discussion *supra*, we find Appellant's argument to be meritless. We further find that the Commonwealth presented overwhelming evidence regarding Appellant's guilt. The jury found the Commonwealth's evidence to be credible, and we will not disturb this finding on appeal. *Commonwealth v. Hunter*, 381 Pa.Super. 606, 554 A.2d 550 (1989). The fact that Appellant gave a different version of the events does not require a finding that the verdict was against the weight of the evidence. *Id.* Clearly, the jury's verdict was not so contrary to the evidence as to shock our sense of justice, making the award of a new trial imperative. *Id.*

Having found that Appellant's confessions were properly admitted, that the pre-arrest identification was not unduly suggestive, and that the verdict was not against the weight of the evidence, we affirm.

Affirmed.

---

3. While Appellant's appearance did not match the officers' appearance exactly, there were numerous similarities present. For example, all three men were dark complected, of the same age bracket, and of the same height. Moreover, both Officer Adams and Appellant wore a black jacket during the identification process.