J. S20019/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| ANTHONY J. CAPLE, | : | No. 2630 EDA 2015 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, February 26, 2015,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0006379-2011

BEFORE:  BOWES, J., OTT, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED MAY 16, 2017**

Anthony J. Caple appeals from the judgment of sentence of February 26, 2015, following his conviction of robbery, criminal conspiracy, and possession of an instrument of a crime ("PIC").[1]  On appeal, he challenges the trial court's denial of his motion to suppress identification. We affirm.

On August 1, 2014, following a jury trial, appellant was convicted of the above-mentioned offenses.[2]  The charges related to the May 19, 2011 robbery of the victim, Millard Goldsmith ("the victim").  Post-trial motions

---

[1] 18 Pa.C.S.A. §§ 3701(a)(1)(ii), 903(c), & 907(a), respectively.

[2] The trial court found appellant not guilty of the bifurcated charge of possession of a firearm by a person prohibited under 18 Pa.C.S.A. § 6105(a)(1).

were denied, and on February 26, 2015, appellant received an aggregate sentence of 10 to 20 years' imprisonment, followed by 10 years of probation. Post-sentence motions were denied, and this timely appeal followed. Appellant has complied with Pa.R.A.P. 1925(b), and the trial court filed a Rule 1925(a) opinion.

Appellant has raised the following issue for this court's review:

> Did not the trial court err in denying appellant's motion to suppress identification testimony, where the circumstances of the out-of-court identification by the complainant were unduly suggestive, and where the in-court identification did not have an independent basis sufficient to purge the taint of the out-of-court identification?

Appellant's brief at 3.[3]

> The role of this Court in reviewing the denial of a suppression motion is well-established:

> > An appellate court's standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Since the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those

---

[3] Additional issues raised in appellant's Rule 1925(b) statement, including whether the verdict was against the weight of the evidence, have been abandoned on appeal.

> facts and may reverse only if the legal conclusions drawn therefrom are in error.
>
> *Commonwealth v. Stevenson*, 894 A.2d 759, 769 (Pa.Super. 2006) (citation omitted). Although we are bound by the factual and the credibility determinations of the trial court which have support in the record, we review any legal conclusions *de novo*. *Commonwealth v. George*, 878 A.2d 881, 883 (Pa.Super. 2005), *appeal denied*, 586 Pa. 735, 891 A.2d 730 (2005).

*Commonwealth v. Wells*, 916 A.2d 1192, 1194-1195 (Pa.Super. 2007).

> As both the Pennsylvania Supreme Court and this Court have recognized, the suggestiveness of police tactics in the identification process is one factor to consider in determining whether to admit identification evidence, but suggestiveness alone will not necessarily cause the evidence to be excluded. *See Commonwealth v. Ransome*, 485 Pa. 490, 495, 402 A.2d 1379, 1382 (1979) ("Suggestiveness alone does not warrant exclusion. Instead '[i]t is the likelihood of misidentification which violates a defendant's right to due process, and it is this which [is] the basis of the exclusion of evidence.'" (citations omitted)); *Commonwealth v. Johnson*, 301 Pa.Super. 13, 446 A.2d 1311 (1982) (accord), *aff'd in part*, *vacated in part* 499 Pa. 380, 453 A.2d 922 (1982). The United States Supreme Court has stated that a pre-trial identification will not be suppressed unless it can be shown that the identification procedure "was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. U.S.*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); *see Commonwealth v. Johnson*, 301 Pa.Super. 13, 15, 446 A.2d 1311, 1312 (1982).

*Commonwealth v. Vanderlin*, 580 A.2d 820, 824 (Pa.Super. 1990).

"[T]he reliability of an identification is the linch pin [sic] in determining

- 3 -

whether the identification testimony is admissible. Courts must look to the totality of the circumstances to determine whether an identification is reliable." *Id.*, citing *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977).

> The factors to be considered in determining admissibility of the identification claimed to be overly suggestive include: 1) the witness's opportunity to observe the perpetrator at the time of the crime; 2) the witness's degree of attention; 3) the accuracy of the witness's description; 4) the level of certainty the witness demonstrates; and 5) the lapse of time between the crime and the confrontation.

*Commonwealth v. Palagonia*, 868 A.2d 1212, 1218 (Pa.Super. 2005), *appeal denied*, 880 A.2d 1238 (Pa. 2005), citing *Commonwealth v. Meachum*, 711 A.2d 1029, 1034 (Pa.Super. 1998), *appeal denied*, 727 A.2d 1119 (Pa. 1998). "Absent some special element of unfairness, a prompt 'one on one' identification is not so suggestive as to give rise to an irreparable likelihood of misidentification." *Meachum*, 711 A.2d at 1034, citing *Commonwealth v. Brown*, 611 A.2d 1318 (Pa.Super. 1992).

At the suppression hearing held on October 19, 2012, the victim testified that at approximately midnight on May 19, 2011, he was walking home on Market Street heading towards 54th Street in the City of Philadelphia. (Notes of testimony, 10/19/12 at 7-8.) At the intersection of Market and Conestoga streets, the victim was stopped by two armed men who directed him into a nearby alleyway. (*Id.* at 8-9.) The victim testified that the intersection was illuminated by lights from the "El" train running

along Market Street. (*Id.* at 8.) The victim testified that he could see the men's faces. (*Id.*)

The victim refused to go into the alleyway and "just fell on the ground." (*Id.* at 9.) The victim testified that the ordeal lasted for several minutes, and he was looking at the perpetrators the entire time. (*Id.* at 9, 16-17.) At some point, an unidentified accomplice waiting in a vehicle across the street yelled, "5-0," warning of approaching police, and when the gunmen looked up, the victim ran away. (*Id.* at 9.) The gunmen ran north on Conestoga Street; the victim ran down Market Street towards the police. (*Id.* at 9-10.)

The victim told police, "Two guys just robbed me and they are armed." (*Id.* at 11.) The police told the victim to get into their van, and they drove around the area searching for the suspects. (*Id.* at 11-12.) The police van then parked in front of the Salvation Army on Arch Street, approximately 300 yards from Conestoga Street. (*Id.* at 12.) The victim had given police a description of the suspects. (*Id.*) The victim testified that after approximately one hour, he was driven back to Conestoga Street to make an identification. (*Id.* at 13.) When the victim arrived at Conestoga Street, an officer was holding appellant by the arm and searching his pockets. (*Id.* at 14.) The police put a spotlight on appellant and asked the victim, "Is that the guy?" (*Id.* at 14, 20-21.) The victim answered in the affirmative. (*Id.* at 14.) The victim testified that he was "100 percent" certain that appellant

was one of the individuals who had robbed him. (*Id.* at 15.) The victim testified that, "I knew this was who it was when I saw the person when they spotlighted him. I knew who he was." (*Id.* at 21-22.)

Officer Gary Mercado testified that at approximately 12:00 a.m. on May 19, 2011, he was approached by the victim who stated, "These guys robbed me," and pointed to the perpetrators. (*Id.* at 23.) Officer Mercado saw the men run into the alleyway. (*Id.*) Officer Mercado called for back-up and attempted to enter the alleyway but could not due to excessive vegetation. (*Id.* at 24-25.) Eventually a K-9 unit apprehended appellant in the alleyway, and the victim was brought over to make an identification. (*Id.*) Officer Mercado testified that one officer was physically holding appellant while approximately 8-10 other officers were scattered around the area. (*Id.* at 26-27.) Appellant was not placed into the police vehicle until he was positively identified by the victim. (*Id.* at 28.) Later, after appellant was transferred into a paddy wagon, the victim positively identified him a second time. (*Id.* at 26-28.)

Appellant argues that the identification procedure in this case was unduly suggestive, where the victim was informed by police that, "They had got the guy," appellant was standing in front of a police vehicle and flanked by police, including a K-9 unit, and a spotlight was being shone onto appellant's face. (Appellant's brief at 11.) According to appellant, it was

nearly impossible for the victim not to identify appellant under these circumstances. (*Id.*)

Furthermore, appellant contends that the identification took place an hour after the robbery; the robbery itself was brief, lasting only a couple of minutes; the victim was naturally focused on the perpetrators' weapons, not their faces; the victim was distracted, talking on his phone when he was attacked; and the victim had been out drinking with friends, suggesting that he was impaired at the time he identified appellant. (*Id.*) Appellant also claims that the victim's description of the perpetrators did not match up with appellant's actual appearance. (*Id.*)

We agree with the trial court that the identification procedure used here was not so suggestive as to give rise to an irreparable likelihood of misidentification. Although the victim did testify that the police told him, "They had got the guy," he also testified that, "They wanted me to identify [him] to make sure that was the person." (Notes of testimony, 10/19/12 at 19.) The victim agreed that the purpose of the identification was to make sure the police had the right person. (*Id.* at 21.) Furthermore, while there were numerous police personnel in the area, appellant was only being held by one officer and had not yet been placed into a police vehicle. (*Id.* at 26, 28.) *See Commonwealth v. Allen*, 429 A.2d 1113, 1121 (Pa.Super. 1981) (where the identification was made a little more than an hour after the crime, was within one block from the crime scene, the victims had a good

opportunity to observe the perpetrators, and the victims unhesitatingly identified the defendants, the fact that the defendants were handcuffed and that the police asked the victims whether the defendants were the perpetrators did not constitute special elements of unfairness).

Examining the factors listed above in determining the admissibility of an identification, despite the relatively brief nature of the incident, the victim testified that he was able to view the perpetrators' faces for several minutes. (Notes of testimony, 10/19/12 at 9.) The victim testified that the area was illuminated by lights from the El train. (*Id.* at 8.) There is nothing to indicate that the victim was so distracted by the perpetrators' weapons that he could not make a reliable identification; in fact, he specifically testified that he looked at their faces. (*Id.*) According to the victim, he was looking at them the entire time. (*Id.* at 16.) Only an hour passed between the robbery and the identification, and the victim testified that he was "100 percent" certain that appellant was one of the men who had robbed him. (*Id.* at 15.)

Appellant claims that the victim had been drinking that night and was on the phone when he was robbed, and therefore, his identification was unreliable. Appellant also argues that his description of his assailants did not match appellant's appearance. (Appellant's brief at 6, 11.) From our review of the suppression transcript, these issues were not raised as part of appellant's pre-trial motion to suppress the identification. Rather, this was

trial testimony. (Trial court opinion, 3/17/16 at 15, 19.) Furthermore, any alleged discrepancy between the victim's description and appellant's appearance was only one factor to consider.

For these reasons, we agree that appellant failed to demonstrate that the out-of-court identification procedure was impermissibly suggestive. As such, it is unnecessary to consider whether the victim had an "independent basis" for the subsequent in-court identification. The trial court did not err in denying appellant's suppression motion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/16/2017